THE STATE OF KANSAS, *ex rel.* A. G. McBRIDE, *County Attorney of Phillips County*, v. THE BOARD OF COMMISSIONERS OF PHILLIPS COUNTY.

1. COUNTY SEAT; *Assessment Roll.* The lists made out by the assessors under the provisions of § 65 of the tax law are the assessment rolls referred to in § 4 of the act concerning the location and removal of county seats.

2. COUNTY SEAT, *Relocation of; Petition; Mandamus.* Where a petition is presented to the board of county commissioners, asking it to order an election for the relocation of the county seat in a county where, under § 2 of the county-seat act, it is necessary that the petition should contain three-fifths of all the legal electors of the county, and the petition does contain three-fifths of the legal electors as shown by the last assessment rolls, but does not contain three-fifths of all the legal electors as may be ascertained from the papers from which such assessment rolls are or should be made, to wit, the personal-property statements made out for the assessors by the various persons, companies, corporations and designated listing agents, *held*, that while the county board might be permitted to order an election for the relocation of the county seat upon such petition and assessment rolls without any examination of the personal-property statements, yet it will not be compelled to do so by mandamus, that the writ of mandamus is not wholly a writ of right, but lies to a considerable extent within the sound judicial discretion of the court where the application is made, and no court should allow a writ of mandamus to compel a technical compliance with the letter of the law where such compliance will violate the spirit of the law.

*Original Proceedings in Mandamus.*

ACTION brought in this court March 21, 1881, by *The State of Kansas*, on the relation of A. G. McBride, county attorney of Phillips county, against the *Board of Commissioners* of said county, consisting of M. Fisher, H. S. Granger and L. P. Johnson, to compel such board to order an election for the relocation of the county seat of that county. An alternative writ of mandamus was issued herein, which Fisher, the chairman of the board, answered April 25, 1881, showing cause. The opinion contains a sufficient statement of the facts.

*A. G. McBride,* county attorney, and *John Martin,* for plaintiff.

*Rossington & Smith,* and *Stinson & McElroy,* for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of mandamus brought in this court in the name of the state by the county attorney of Phillips county, to compel the board of county commissioners of said county to order an election for the relocation of the county seat of said county. Section 2 of the act concerning the location and removal of county seats, (Comp. Laws of 1879, p. 313,) provides, among other things, that wherever the county seat of any county has been located by a vote of the electors of the county, and where county buildings have been erected, donated or purchased at the county seat, the cost of which shall have been at least $2,000, and not exceeding $10,000, and five years have elapsed since the last election for the location or relocation of the county seat, the board of county commissioners shall, upon a petition of three fifths of the legal electors of such county, order an election for the relocation of the county seat. Section 4 of said act provides as follows:

"SEC. 4. For the purposes of this act, the number of legal electors in the county shall be ascertained from the last assessment rolls of the several township assessors in the county."

These sections apply to this case, and under them a petition was presented to the county commissioners of Phillips county, asking for an order for an election for the relocation of the county seat of that county. The commissioners refused to order the election, upon the ground that the petition did not contain three-fifths of the legal electors of the county; and whether the petition did contain such number of legal electors as ascertained, or as ascertainable from competent evidence, is the principal and indeed the only question now presented for our consideration. Involved in this question, however, are

several other questions, among which are the following: What constitutes the last assessment rolls of the several township assessors in the county? And may the county commissioners under any circumstances go beyond the last assessment rolls to ascertain the number of legal electors in the county? The township trustee of each township is, by virtue of his office, the township assessor of such township. (Comp. Laws 1879, p. 288, § 76, and p. 946, § 39.) And between the first day of March and the first day of May of each year it is his duty to call upon each person, company, corporation or designated listing agent for a statement of all the personal property subject to taxation held by such person, company, corporation or designated listing agent. (Comp. Laws 1879, p. 949, § 59; see also §§ 4, 9 and 10 of the tax law.) And these statements are returned by the township assessor to the county clerk, where they are preserved. (Comp. Laws 1879, p. 951, § 66.) But before returning these statements, the township assessor for his township (as well as every city assessor for his city) is required to make out from these statements and deliver to the county clerk, in tabular form and in alphabetical order, a list of the names of all persons, companies or corporations in whose name any personal property has been listed or assessed, and to enter separately, in appropriate columns, opposite each name, the aggregate value of each species of personal property assessed. (Comp. Laws 1879, p. 950, § 65.) And the lists thus made out by the township assessors and delivered to the county clerk are unquestionably the assessment rolls referred to by § 4 of the act concerning the location and removal of county seats. (*County Seat of Linn County*, 15 Kas. 531. Sec. 61, p. 1040 of the Gen. Stat. 1868, corresponds with § 65, p. 950, Comp. Laws of 1879.) It would seem that these lists or assessment rolls should contain the name of every person, company or corporation who has any property subject to taxation. We shall however consider this question further before concluding this opinion.

In the present case it would seem that there were 2227 names found on the assessment rolls, as made out by the

several township assessors, in the county; and that there were 454 names found on statements returned to the several township assessors by persons assessed, which were not found on the assessment rolls; and there were 1568 names signed to the petition, asking for a relocation of the county seat. Now, while some of the names found on the assessment rolls, and on the personal-property statements, and on the petition, were not the names of legal electors of the county, yet, for the purpose of this case, we shall assume that all of them were; because, if we should deduct from the rolls and statements and petition the names of all persons who were not legal electors, the legal questions involved in the case would still remain precisely the same. There would still remain on the petition the names of more than three-fifths of all the legal electors whose names are found on the assessment rolls, but not three-fifths of all the names of legal electors whose names are found on both the assessment rolls and the personal-property statements, taken together. The question then arises: Should an election be ordered for the relocation of a county seat in every case where a petition for such relocation is presented to the county board by three-fifths of the legal electors whose names are actually placed on the assessment rolls? Or may the county board also consider all names of legal electors omitted from the assessment rolls, but found on the personal-property statements? And may the county board refuse to order an election in any case where three-fifths of the legal electors, as found on the assessment rolls and on the personal-property statements taken together, have not petitioned for the election? This leads us to a more careful examination of the question.

As before stated, we think the lists made out by the several township assessors under § 65 of the tax law constitute the assessment rolls of the several townships, as referred to in § 4 of the act concerning the location and removal of county seats; and if the county board should refuse to receive any evidence tending to show that there were other legal electors of the county besides

1. County seat; assessment roll.

those whose names are found on such assessment rolls, we should probably not compel it by mandamus, or otherwise, to receive any such evidence. But in this case the county commissioners did receive other evidence. As before stated, they received the personal-property statements made out and delivered to the township assessors, by the various persons, companies, corporations and designated listing agents; and they founded their decision upon these personal-property statements, as well as upon the various assessment rolls.

The first question which we shall consider is, whether all the names found upon these personal-property statements should be placed by the township assessors upon the assessment rolls. We think we must answer this question in the affirmative. Every person residing in the county and owning property subject to taxation is required to make out one of such statements (tax law, §§ 4, 9, 10, 59 and 66); and the name of every person found on such statements must be placed on said lists or assessment rolls, (tax law, § 65). Afterward, the county clerk prepares an abstract of such assessment rolls for the auditor of state, and in such abstract he states "the aggregate value of all personal property" and "the total value of all taxable property" (tax law, § 76); and, in addition thereto, furnishes an abstract of the aggregate values of all the different specific classes of property required to be assessed, and also furnishes the aggregate amount of the constitutional exemptions. (Same section.) All this would seem to indicate that all taxable property, with the name of the owner, should first go upon the personal-property statements, and then should be placed upon the assessment rolls. For if this were not so, some portions of §§ 65 and 76 of the tax law would be meaningless, and the county clerk could not furnish to the auditor of state the abstract required by § 76. It is claimed, however, by the plaintiff that, as the constitution and statutes of the state of Kansas exempt $200 worth of personal property for each family (Const., art. 11, § 1; tax law, § 3, sub-div. 9), the names of all persons who do not own any taxable property,

except personal property which is worth less than $200, should not be placed upon the assessment rolls. We think, however, that this claim is incorrect. The constitution and statutes do not extend this $200 exemption to any particular or specific property except to personal property in general, nor do they extend it to any particular class of persons, except to families; but they merely exempt $200 worth of any kind of taxable personal property which the family or head of the family may have. All property that any person may have, except such articles as are specifically exempt, are taxable, and they are first assessed, and then the $200 exemption for each family is deducted from the aggregate amount of the assessment; and if any family has less than $200 worth of personal property which is not specifically exempt, the property is nevertheless assessed, and the name of the person assessed, and the articles assessed, with their values, are placed on his personal-property statement, and then the names of all such persons and the aggregate value of all the articles assessed to them are placed on the assessment rolls; and then from these assessment rolls the county clerk prepares his abstract of "the aggregate value of all personal property" and "the total value of all taxable property," for the auditor of state.

We think it is clear that the assessment rolls should contain the names of all persons who own any taxable property, although they may be the heads of families, and may own nothing but personal property, and may not own even two hundred dollars' worth of that; for they are assessable as we think, although they are not taxable. But suppose the assessors fail to place the names of all persons who are assessable and have been assessed, upon the assessment rolls: then may the county commissioners, when a petition is presented to them for a relocation of the county seat, look behind the assessment rolls and to the personal-property statements for the purpose of ascertaining the number of legal electors in the county? We think they may, although probably they could not be compelled to do so. At least, if they should,

on their own motion, go behind the assessment rolls and to the personal-property statements, we do not think that any court should attempt to restrain them from doing so; and certainly no court should compel them by writ of mandamus to order an election upon a petition and the assessment rolls alone, when the personal-property statements show that the assessment rolls do not contain the names of near all the legal electors of the county, and also show that the election should not be ordered upon the petition presented. The writ of mandamus is not wholly a writ of right, but lies to a considerable extent within the sound judicial discretion of the court where the application is made, (*The State v. Marston,* 6 Kas. 524, 537; *The State v. Stevens,* 23 Kas. 456); and no court should allow a writ of mandamus to compel a technical compliance with the letter of the law, where such compliance will violate the spirit of the law. The object of the legislature in providing that the county commissioners should look to the last assessment rolls was solely for the purpose of enabling the commissioners to ascertain the number of legal electors in the county; but if the assessment rolls are so defective that the commissioners cannot ascertain the number of legal electors in the county from them, then the commissioners should certainly be allowed to go back to the papers from which the assessment rolls are made, which are the personal-property statements. These personal-property statements are all record evidence. They are filed in the office of the county clerk, who is also the clerk of the board of county commissioners, and therefore they are, in one sense, records in the county commissioners' own office.

This view of the case permits the county commissioners to carry out the will and intention of the legislature; and it does no harm or injustice to any person. The legislature intended that no election should be ordered for a relocation of a county seat in cases like the present case, unless a number of the legal electors of the county equal to three-fifths of the number of legal electors who were assessable and had

*2. County seat, relocation of; petition; mandamus.*

been assessed at the last assessment, should petition for such an election; and this view of the case permits the county commissioners to carry out such intention of the legislature.

We think the writ of mandamus should be denied in this case; therefore judgment will be rendered in favor of the defendant board, and against the plaintiff for costs, and the peremptory writ will be denied.

All the Justices concurring.