[No. 1560.]

THE STATE OF NEVADA, EX REL. OFFICE SPE-
CIALTY MANUFACTURING COMPANY, A COR-
PORATION, RELATOR, *v.* H. H. BECK, T. K. HYMERS,
AND GEORGE H. FRAZER, AS THE BOARD OF COUNTY
COMMISSIONERS OF WASHOE COUNTY, NEVADA, RESPOND-
ENTS.

MANDAMUS. *Mandamus* should not be granted to compel a technical com-
pliance with the strict letter of a law, in disregard of its spirit.

COUNTIES—CLAIMS AGAINST—STATUTES. Relator presented its claim against
Washoe county under the act of March 9, 1899 (Stats. 1899, p. 60). The
transaction upon which the claim was based had previously been
adjudged fraudulent. It also appeared that there was no dispute as
to the value of the property in question: *Held,* that a county was
not bound under the said act to submit the question of the value of
certain property to appraisers where there was no dispute as to its
value, nor to pay the award of appraisers appointed under its pro-
visions regardless of any meritorious defense the county might
have against the claim, and, further, that the compelling of a county
to pay a claim which had finally been adjudged by the courts to be
fraudulent, was not within its object.

ACTION by the State, on the relation of the Office Specialty
Manufacturing Company, a corporation, for a writ of *man-
damus* against H. H. Beck, T. K. Hymers, and George Frazer,

as the Board of County Commissioners of Washoe County. Writ denied.

The facts sufficiently appear in the opinion.

*Torreyson & Summerfield* and *F. H. Norcross*, for Relator:

I. *Mandamus* is the proper remedy to be invoked by relator. It was and is the specific legal duty of respondents to allow relator's claim, and they were not clothed with discretionary authority in the premises. (Stats. 1899, p. 60; *Mau* v. *Liddle*, 15 Nev. 271; *Humboldt Co.* v. *Churchill Co.*, 6 Nev. 30; *State* v. *Blossom*, 22 Nev. 71.)

II. That relator's cause is attainted by fraud is an unwarranted assumption of respondents. It is based upon undisputed evidentiary matters which brings the claim strictly within the scope of the act of March 9, 1899. "So far as the courts are concerned, the statute must be taken as expressing the free will and wish of the legislature, whatever may have been the means employed to secure its adoption, and irrespective of any agreements or understanding had between members. Such matters the courts have no power of reaching." (*Humboldt Co.* v. *Churchill Co.*, 6 Nev. 30.)

III. The former decisions relating to the furnishing of the metallic furniture by relator to Washoe county cannot properly be considered in this case. They were rendered under the law as it then existed and upon facts, principally agreed upon, having applicability to the law at that time. The original contracts were held to be fraudulent simply because they were violative of the provision of law requiring advertisement in all cases where the consideration amounted to $500. The act of 1899 is not limited in its operation by the amount or the value of property furnished. The evidence before the appraisers shows clearly that relator was never guilty of actual fraud. The act of 1899 provides a procedure to compel counties to do justice and is in harmony with the general doctrine of the courts that municipalities must do justice. (*Norwood* v. *Baker*, 172 U. S. 269; *McConville* v. *St. Paul*, 77 N. W. 993.)

IV. The act of 1899 is definitive of the nature and character of the claims which it affects and affords a remedy

for and the claim of relator is squarely embraced within the statutory definition.

V. The act of 1899 itself defines the class of claims which it embraces. It must be clearly apparent that if the act was intended to affect valid and existing claims at the time of its passage the act would have been superfluous and wholly unnecessary. It seems hardly probable that the court will ascribe to the legislature an intent to do a useless thing by enacting a superfluous law. The authority of the legislature by general law to provide for the adjustment and the allowance and payment of claims against counties which are not enforceable under existing law is practically unquestioned. These curative laws have many times received the sanction of the courts. (*Ritchie* v. *Franklin Co.*, 22 Wall, 67; *Steines* v. *Franklin Co.*, 48 Mo. 175.)

VI. Counsel state that the transaction out of which the furniture in question was delivered to Washoe county, has thrice been adjudged fraudulent. But we do not understand that this court or the lower court ever found actual fraud or corruption to have existed in the transaction. The facts, proven and admitted, warranted the court in declaring that the same constituted constructive fraud, further than this we do not understand that the court could, or did find, under the pleadings and the proofs. If actual fraud exists in this case it certainly then is not of the ordinary variety. Here was a very valuable lot of office furniture sold and delivered to Washoe county. The county needed and wanted it for the preservation of its public records. Prior to its sale and delivery to the county the grand jury had called the commissioners' attention to the need of such furniture, and recommended that such need be supplied. The commissioners carried out the suggestion of the grand jury and caused to be manufactured and delivered by relator the furniture now in the clerk's office of Washoe county, and no one has yet been found to come forward and say that the furniture was not what was wanted or was not worth every dollar that was ever asked for it.

VII. The power of the legislature is fixed by the constitution, and courts cannot enlarge or abridge that power. There

is nothing in the constitution of this state which says that
the legislature may relieve one class of persons from the
effect of certain acts, if occasioned in a certain way, and not
in another.   There is nothing in the constitution which gives
the judicial branch of government the authority to deter-
mine what class of laws ought to be passed and what not, or
to determine the justness or injustness of laws, or whether
this law or that is up to the proper moral standard.   This
court, in a very able opinion by Chief Justice Lewis, found in
5 Nev. 283–314, discusses the powers and prerogatives of the
three coördinate branches of our state government.   We
quote from that opinion, beginning on page 293:   " But, not-
withstanding this very evident investment of the legislature
with the soveréign and omnipotent political power of the
people, it has been assumed by some judges, and so argued in
this case, that the courts have the right to annul an act of
the legislature upon the sole ground that it is unjust; or, as
it is put in this case, opposed to natural justice; or, by some
judges, as against the ' great principles of eternal right.'   We
believe, however, that such doctrine cannot be reconciled with
a correct view of our form of government and the distribu-
tion of its powers.   Whence this power in the judiciary to
pass upon the justice or injustice, the expediency or inex-
pediency of an act of a coördinate branch of the government?
It is not given in the constitution.   The legislative power
is not limited in that instrument to the enactment of just
laws, or such as may, in the opinion of judges, be deemed
expedient.   Nor did the people think it necessary in any
way to guard themselves from laws incompatible with the
uncertain thing called natural justice; or to hedge them-
selves about with what judges are pleased to call the prin-
ciples of eternal justice.   This question is simply one of
power; the legislature either possesses it unlimited, or not at
all.   It cannot depend upon the extent or character of the
injustice embodied in any particular law.   The courts are no
more authorized to annul a law of the legislature, because
opposed to the principles of natural justice, than because it
may violate the simplest natural right.   *   *   *   If the
constitution has not limited the powers of the legislature to
the enactment of just laws, or such as do not conflict with

the principles of natural justice, the courts have no more right to so restrict it than they have to test the validity of a law by the dogmas of the church, or the precepts of revealed religion. If the legislature may be held to have transcended its power in enacting a law opposed to the first principles of right, it may be held to do so at the pleasure and caprice of judges. The power is no more given in the one case than the other. Such was not the will of the people as expressed in the constitution, but rather that each of the three great departments should be supreme within its sphere. Surely, the power to make the law must necessarily carry with it the right to judge of its expediency and of its justice." (*Gibson* v. *Mason*, 5 Nev. 291–314.)

VIII. The legislature has power to relieve a person or a corporation from the effect of a statute under the provisions of which a forfeiture of money or valuable property has occurred. (*Connor* v. *Bent*, 1 Mo. 235; *People* v. *Crennon*, 141 N. Y. 239; *Dennis* v. *Maynard*, 15 Ill. 477.)

*E. L. Williams*, District Attorney, and *A. E. Cheney*, for Respondents:

I. The relator does not come with a cause free from fraud, or which justifies the exercise of the courts discretionary power over this writ. (High, Extr. Leg. Rem., 3d ed., sec. 26; *Com.* v. *Henry*, 49 Pa. St. 530, 538.)

II. "All the decisions agree that the writ will not lie unless the applicant shows a clear, legal right to the relief demanded." (*State* v. *LaGrave*, 22 Nev. 419.)

III. It is not clear and undoubted that the relator has any valid claim against Washoe county to justify the finding of the appraisers or which comes within the purview of the act of March 9, 1899. That act only relates to valid subsisting claims.

IV. The act of March 9, 1899, does not purport to give a right of action. It does not manifest any intention on the part of the legislature to legalize any invalid or unlawful claim against any county. Even if it were admitted that it had the power so to do, the exercise of a power of that doubtful nature is not to be inferred, nor raised by contention. The presumption is that the law relates to valid and existing

claims.   As to those it probably was intended to give a new remedy.   The act in question does not attempt to do any more.   Whether the relator claims that it does more is yet unknown.   It is plain from the record that the relator had no cause of action when this act was passed.   The judgment, on demurrer in one action and on appeal in another, established that there was no right of recovery in its behalf.   The statute of limitation was a prohibition against its allowance or payment by the county, and a complete extinguishment of the cause of action.   (37 Cal. 196.)   Having no claim against Washoe county at the time of the passage of this act, and the act failing to give a right of action to any one, simply enumerating the conditions necessary to enable one to avail himself of the new remedy, it should be construed, even if held constitutional, as only intended to give a new remedy for those who have valid claims of a certain character against a county.   The title of this act, "to regulate the allowance and payment of certain claims against counties," manifests its whole scope and purpose.   Its express and only purpose is to regulate the allowance and payment of certain claims. There is not a word indicative of a purpose or intent to relieve any person from any default or penalty, not a phrase which manifests a desire to raise the bar of the statute of limitations, or avoid the force and effect of judgments of unquestioned validity, nor a sentence which authorizes the inference that any unlawful, fraudulent or illegal contract was to be legalized.   On the contrary, the title, the limitation of time, the designation of the class of claims, and the persons who may avail themselves of it, the method of procedure therein set forth, and the final consummation of the act—an award —demonstrates that this act is wholly remedial.   It is confidently submitted that the record shows that the relator is not entitled to the benefits of the act of March 9, 1899, even if it is a valid legislative act.

V.   Where a person acting in good faith has innocently sold and delivered to a municipal corporation personal property, which it retains without making fair recompense, and the seller is denied relief in the ordinary course of law because of a failure to comply with some statute provision regulating the sale, many considerations of equity and jus-

tice plead in his behalf, and if the case at bar were of that character, no fault could be found with the court if it resolved every doubtful question in behalf of the claimant. But such is not this case. It has been thrice adjudicated that this relator attempted to enter into an illegal and fraudulent contract with the board of commissioners of Washoe county, for the sale and purchase of the property in question. Under these circumstances it comes before the court with unclean hands, presenting a claim, illegal in its inception and thoroughly tainted with the original frauds. As was said in *Santa Cruz Rock Paving Co.* v. *Broderick*, 113 Cal. 635, the performance of a contract, knowingly made in violation of the law, raises no equitable consideration in behalf of the violator, and the county of Washoe, which these respondents represent, owe the relator no more obligation to indemnify it for loss which it has justly sustained by reason of its fraudulent and illegal assault upon its public treasury. "*Ex dolo malo non oritur actio.*" (Broom's Legal Maxims, p. 728.)

By the Court, BONNIFIELD, C. J.:

An act of the legislature approved March 9, 1899, provides:

"Section 1. At any time within sixty days after the approval of this act any person, firm or corporation, which has furnished and delivered to any county of the state of Nevada, personal property which is retained by any such county under claim of ownership and for which such county has paid no compensation, or has received in return and retains all payments which have been made on account of such property by such county, is authorized to nominate in written communications delivered to the county clerk, the chairman of the board of county commissioners, and to the county auditor of such county, one appraiser, to fix the true value of such property, and upon receiving such communication, the board of county commissioners, at its first regular meeting thereafter, shall nominate one such appraiser, and the county auditor, within five days after receiving such communication, shall nominate one such appraiser. Thereupon the county clerk of such county shall at once notify each of said appraisers, who, or a majority thereof, shall within ten days thereafter meet at the office of the county clerk of such

county and hear all evidence submitted to them and then shall proceed to fix the true value of such property and file their written finding of such value, or that of a majority of such appraisers, with such county clerk. All evidence heard by such appraisers shall be documentary or that of witnesses testifying under oath first administered by the county clerk of such county. Upon the filing of such written finding of the value, the person, firm or corporation furnishing and delivering such personal property, is authorized to file a claim against such county for the amount fixed by such appraisers, or a majority thereof, and the board of county commissioners shall allow, the county auditor shall audit and allow, and the county treasurer shall pay the same." (Stats. 1899, p. 60.)

Claiming to be "acting under and by virtue and in pursuance of" the said legislative act, the relator presented a claim against Washoe county in the sum of $1,498, for certain metallic furniture it furnished and delivered to said county in the year 1896. The board of county commissioners rejected said claim. The relator petitions for a writ of *mandamus* to compel the board to allow the same. It appears that the relator appointed an appraiser, and gave notices thereof, as provided by said act; that a majority of said board appointed one appraiser, the chairman of the board refusing to participate in the matter, and the auditor refused and failed to appoint an appraiser; that the two appraisers met, heard evidence as to the value of said property, and fixed the same at the above-named sum.

A great many legal questions are presented, and objections made by counsel for respondents against the issuing of said writ, and the act of the legislature is assailed as being unconstitutional on several grounds. We do not deem it necessary to pass upon these several contentions of counsel, except such as may be involved in the inquiry to which we direct our attention.

Is the relator's claim within the spirit and meaning of said act? It seems clear that the object of the legislature in passing the act was simply to provide a mode for determining the question of the value of property furnished and delivered to a county where the value was the only question in dispute

between the county and the person furnishing the property. Certainly the legislature did not intend that a county should be bound to submit the question of value to appraisers when there was no dispute as to the value, and that the county should be bound to pay the award of the appraisers regardless of any meritorious defense the county might have against the claim. The record shows, and relator's counsel admit in their brief, that there never was any dispute between the relator and Washoe county as to the value of the property in question—$1,498.

The agreed statement of facts shows that the question of the validity of relator's claim against Washoe county with respect to said property has been directly involved in three actions brought by the relator in the district court of said county, and that in each case said claim was adjudged to be fraudulent on the part of the relator, and void, and that one of these cases was appealed to the supreme court, and the judgment of the trial court affirmed. (24 Nev. 359.)

Whatever may have been the legislative object in passing the act, we presume it was a good one, but we cannot indulge such violent presumption as that the object was to compel a county to pay a claim which has been finally adjudicated by the courts to be fraudulent on the part of the claimant.

"Mandamus should not be granted to compel a technical compliance with the strict letter of the law, in disregard of its spirit." (Wiedwald v. Dodson, 95 Cal. 450, 30 Pac. 580; State v. Board Comrs. Phillips Co., 26 Kan. 419; High, Extr. Rem., 3d ed., sec. 9.)

The writ is denied.