# GARFIELD *v.* UNITED STATES EX REL. TURNER.

PLEADING; MANDAMUS; DISCRETION; INDIANS.

1. Facts alleged in an answer or return upon information and belief are sufficient to raise questions of law and fact; and, therefore, although allegations of fraud contained in the answer to a petition for the writ of mandamus are made upon information and belief, and the answer is so verified, a demurrer to the answer will be construed as an admission of the allegations of fraud, where the fraud is alleged with sufficient particularity.

2. The writ of mandamus is not a writ of right, but will issue only in the exercise of the sound discretion of the court; and the relator will not be entitled to the writ if he does not come into court with clean hands, or where it is sought by the proceedings to perpetrate a fraud.

3. Before the writ of mandamus will issue to compel the performance of an act, it must appear that the respondent has the power and authority to perform the act sought to be enforced.

4. The court will restrain by injunction the performance of an unlawful act, or command by writ of mandamus the performance of a lawful act; but it will not restrain the performance of a lawful act, or command the performance of an unlawful act.

5. An order of the lower court directing that the writ of mandamus to issue against the Secretary of the Interior commanding him to restore the relators to the rolls of citizenship of the Creek Nation, *reversed,* where the order was entered on a demurrer to the answer, and the answer on information and belief charged fraud on the part of the relators in procuring their enrolment, which enrolment was subsequently canceled by the striking of the relators' names from the rolls.

No. 1855.   Submitted April 8, 1908.   Decided May 5, 1908.

HEARING on an appeal by the respondent, the Secretary of the Interior, from an order of the Supreme Court of the District of Columbia directing that the writ of mandamus be is-

sued against him commanding him to restore the relators of the rolls of membership of the Creek Nation. *Reversed.*

The facts are stated in the opinion.

*Mr. Edward T. Sanford,* Assistant Attorney General, and *Mr. W. R. Harr,* Special Assistant to the Attorney General, for the appellant.

*Messrs. Kappler & Merillat* and *Mr. James K. Jones* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal by the Secretary of the Interior of the United States, James Rudolph Garfield, from an order of the supreme court of the District of Columbia directing that a writ of mandamus issue commanding him to restore to the rolls of citizenship of the Creek Nation the appellees, Lucy Ann Turner, Dixey Griswell, and Maude Turner, Willie Turner, Anna Turner, and Florence Turner, minors, suing by their mother and next friend, Lucy Ann Turner, relators below.

Relators alleged in their petition that they made application, as provided by law, to the commissioner to the Five Civilized Tribes, to be enrolled as freedmen members of the Creek Nation. A hearing was had, at which all the parties were represented by counsel, and relators were duly adjudged to be entitled to enrolment. No appeal was taken by the Creek Nation, and, thereafter, relators' names were placed upon said rolls, which were approved by the Secretary of the Interior on June 16, 1906. It is further alleged that, thereafter, upon false representations, the cases of relators were reopened and that respondent's predecessor in office, without notice to them, arbitrarily and illegally undertook to deprive them of their legal rights by directing that their names be canceled from said rolls. It is alleged that the cancelation of relators' names was not noted on all the freedmen rolls of the Creek Nation prior to March 4, 1907.

Respondent answered, denying the jurisdiction of the court to consider the matters referred to in the petition, and denying that relators were freedmen members or citizens of the Creek Nation, and alleged, upon information and belief, that Lucy Ann Turner procured the enrolment of herself and her five minor children, the other relators, by fraud and misrepresentation. Respondent then sets forth in detail the facts upon which the allegation of fraud is predicated, and alleges that an investigation was had by the commissioner, counsel for relators having notice of the hearing, at which several witnesses were examined and evidence adduced showing that relators were not entitled to enrolment. As a result of the hearing, the commissioner recommended that the names of relators be stricken from the rolls, and the Secretary of the Interior, on February 14, 1907, authorized and directed that the names be canceled from said rolls. It was further alleged that no one of the relators had since been given any allotment, or any certificate of allotment; that the action of respondent's predecessor was in accordance with a long-established and well-recognized practice with respect to the rules of the Five Civilized Tribes. The answer was verified by respondent upon information and belief. A demurrer to the answer was interposed, which was sustained by the court. The court entered a decree ordering the restoration of relators' names to the rolls. From this judgment, respondent prosecutes this appeal.

It is contended by counsel for respondent that the demurrer constituted an admission by relators of the truth of the allegations of fraud contained in the answer, and that, however meritorious their case, they are not here with clean hands, and are therefore not entitled to the writ. Counsel for relators, on the other hand, insist that, since the allegations of fraud contained in the answer were made upon information and belief, and the answer was so verified, the demurrer cannot be construed as an admission of the charge of fraud contained therein. A brief consideration of this issue will be sufficient for the purposes of this inquiry. It is well settled that facts alleged in an answer or return upon information and belief are sufficient to raise dis-

puted questions of law and fact. *United States ex rel. Redfield*
v. *Windom,* 137 U. S. 637, 34 L. ed. 812, 11 Sup. Ct. Rep. 197.
It follows, we·think, that, if such a pleading is sufficient to
raise an issue of fact, a demurrer thereto must logically operate
as an admission of the facts therein alleged. A demurrer to the
answer in an action at law admits all new facts alleged in the
answer. *Re Sanford Fork & Tool Co.* 160 U. 247, 40 L. ed.
414, 16 Sup. Ct. Rep. 291. By "new facts" can be meant only
such facts as are well pleaded, material to the issue, and are
capable of properly presenting disputed questions of fact.

It therefore appears that relators are here admitting that they
fraudulently procured their names to be placed upon the rolls,
and that, upon a hearing and investigation, of which their
counsel had notice, their names were stricken from the rolls by
an order of respondent's predecessor made prior to March 4,
1907, the date fixed by law for the final completion of the rolls
by the Secretary of the Interior. By these admissions, they
have devested themselves of every vestige of right to be heard in
a court of justice. The machinery of the law may always be
set in motion to protect valid property rights; but here no rights
exist. Relators admit they are not Creek freedmen, admit they
are not entitled to enrolment as such, admit that their names
were placed upon the rolls through the perjury of the principal
relator, and admit that their names were ordered stricken from
the rolls prior to March 4, 1907. Their counsel insist that, un-
less this writ is granted, there is no court to which they can
appeal. Under their admissions, no court would admit them.
They are not entitled to a hearing. Hence, it is difficult to un-
derstand how they can be damaged by the refusal of the writ.

The writ of mandamus is not a writ of right, and will issue
only in the exercise of the sound discretion of the court. It
will not issue where no right is shown to exist, nor will it is-
sue to perpetuate a fraud. In High on Extraordinary Legal
Remedies, sec. 26, it is said: "It is important that a person
seeking the aid of a mandamus for the enforcement of his rights
should come into court with clean hands; and, where the pro-
ceedings have been tainted with fraud and corruption, the relief

will be denied, however meritorious the application may be on
other grounds." A similar rule is announced in Spelling on In-
junctions & Extraordinary Remedies, sec. 1380: "While the
remedy by mandamus is not equitable, but strictly legal, yet, by
analogy to the principles prevailing in courts of equity, it is a
uniform requirement that the relator, in seeking this remedy,
must come into court with clean hands. If the proceedings
have been tainted with fraud, or if the relator has, through his
neglect, lost the benefit of a legal remedy to which he was once
entitled, relief will be denied, however meritorious the proceed-
ing may be on other grounds." The principles above announced
are supported in *People ex rel. Wood* v. *Board of Assessors,* 137
N. Y. 201, 33 N. E. 145; *People ex rel. Durant Land &
Improv. Co.* v. *Jeroloman,* 139 N. Y. 14, 34 N. E. 726; *Com.
ex rel. Vandyke* v. *Henry,* 49 Pa. 530; *State ex rel. McBride*
v. *Phillips County,* 26 Kan. 419; and *State ex rel. McClel-
lan* v. *Graves,* 19 Md. 351, 81 Am. Dec. 639.

Conceding that the argument of counsel for relator, that the
Secretary of the Interior had no power to strike these names
from the approved rolls, is correct,—a matter upon which we
express no opinion,—it is likewise manifest that he had no law-
ful power, under the admissions of fraud before us, to place
the names originally upon the rolls. Hence, we are asked to
compel him to perform not only an illegal act, but to now do
something he never had power to do. It is elementary, that, be-
fore a writ of mandamus will issue to compel the performance
of an act, it must appear that the respondent has power and
authority to perform the act sought to be enforced. *Hambleton*
v. *Dexter,* 89 Mo. 188, 1 S. W. 234.

Counsel for relators cite the case of *Noble* v. *Union River
Logging R. Co.* 147 U. S. 170, 37 L. ed. 125, 13 Sup. Ct. Rep.
271, insisting that it supports their position in this case. With
this contention we cannot agree. In that case the court re-
strained the Secretary of the Interior from canceling a map
granting to the company a railroad right of way over public
lands of the United States. It was held that, when the maps
were approved by the Secretary of the Interior, he lost further

control of them. The suit was brought to restrain him from canceling the maps after they had been approved. He insisted on his right of cancelation on the ground that his original approval had been procured through fraud. The court held that the Secretary of the Interior, having approved the maps, lost control of the matter, and, therefore, had no legal authority to cancel them; and a restraining order was issued to prevent him from the threatened performance of an illegal act. Mr. Justice Brown, in his opinion in this case, clearly expressed the distinction between the case there under consideration and the one at bar, when he said: "If he [the Secretary of the Interior] has no power at all to do the act complained of, he is as much subject to an injunction as he would be to a mandamus if he refused to do an act which the law plainly required him to do." A court will restrain by injunction the performance of an unlawful act, or command by writ of mandamus the performance of a lawful act; but it will not restrain the performance of a lawful act, or command the performance of an unlawful act. In the case at bar, whatever authority or lack of authority there may have been for the Secretary of the Interior to act in the premises, he acted; and the enrolment was canceled. If, as contended by counsel, he had lost control of the rolls when the cancelation took place, he had no lawful authority to cancel the names from the rolls. For the same reason, he would have no higher authority to reinstate the names. Hence, the writ here sought is to compel the performance of an unlawful act. On the other hand, if it be conceded that the Secretary had not lost control of the rolls at the time the cancelation took place, it must be held that he was acting in the lawful exercise of his discretion, and the writ cannot issue to control his action in the premises.

Viewed from any standpoint, the writ in this case, upon the facts before us, should be denied. The judgment is reversed with costs, and remanded for further proceedings in accordance with this opinion, and it is so ordered.          *Reversed.*