502     UNITED STATES ex rel. LAWS. v. DAVENPORT.

Syllabus.                                    [34 App.

---

# UNITED STATES ex rel. LAWS v. DAVENPORT.

APPEALS; ASSIGNMENT OF ERROR; TRIAL; JUDGMENT; MANDAMUS; PENSIONS.

1. An assignment of error which presents a question not submitted to the court below is not entitled to consideration.
2. The trial court has the power, during the term at which it is entered, to vacate an order sustaining a demurrer to an answer to a petition for the writ of mandamus, and directing the writ to issue, where the respondent has noted, but has not perfected, an appeal from the order.
3. Mandamus is not a writ of right, and will issue only in the exercise of the sound discretion of the court. It will not issue where no right is shown to exist, or to perpetrate a fraud. (Following *Garfield* v. *United States*, 31 App. D. C. 332.)
4. Mandamus will not issue to compel the Commissioner of Pensions to pay the relator a widow's pension under a special act of Congress; where the relator, by her pleadings, admits charges by the respond-

ent that her deceased husband procured the passage of the act by fraud, and that he was not wounded, as he claimed, while in the service of the United States. (Following *Garfield* v. *United States*, 31 App. D. C. 332.)

No. 2099. Submitted February 1, 1910. Decided March 1, 1910.

HEARING on an appeal from a judgment of the Supreme Court of the District of Columbia discharging a rule to show cause why the writ of mandamus should not issue, and dismissing the petition therefor.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from the judgment of the supreme court of the District of Columbia, dismissing a petition for a writ of mandamus filed by the appellant, Cornelia E. Laws, to compel the appellee, James L. Davenport, as Commissioner of Pensions, to pay to the petitioner, as the widow of one Jerry Gordon, money claimed to be due her upon a pension certificate.

The petition alleges that appellant was the widow of one Jerry Gordon, who died on the 29th of June, 1885, and that Congress, by special act, approved July 15, 1870, granted to said Gordon an invalid pension of $25 a month on account of injuries received at the second battle of Bull Run. By operation of law this pension was subsequently increased to $72 a month. He was paid at the increased rate until May 31, 1881. On that date the Commissioner of Pensions, by the authority vested in him by sec. 4720 of the Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 3258), suspended payment of the pension, and certified the papers to Congress, with a request to repeal the act granting the same. The act authorizing the commissioner to make the certification provides in part as follows: "The Commissioner of Pensions shall, upon satisfactory evidence that fraud was perpetrated in obtaining such special act, suspend payment thereupon until the propriety of repealing the same can be considered by Congress." It appears that Congress never acted upon the recommendation. Several

504 UNITED STATES ex rel. LAWS *v.* DAVENPORT.

Statement of the Case. [34 App.

attempts were made to have the Commissioner reinstate the claim.

Within the time required, appellee answered the petition of the appellant, to which answer appellant filed a demurrer, and the court, upon hearing, sustained the demurrer and ordered the writ of mandamus to issue, from which ruling the appellee noted an appeal to this court. This appeal, however, was never perfected, but became abandoned by the subsequent action of the appellee. During the term at which the order was granted, appellee, on motion, caused the judgment to be vacated, and he was granted ten days in which to amend his answer. Within time, appellee filed his amended answer, which denied that Gordon, while in the service of the United States, in line of duty, at the battle of Bull Run, was so injured as to necessitate the amputation of his legs, but alleged that Gordon was not so injured while in the discharge of his duty or in the employ of the United States. The passage of the private act granting the pension, the issuance of the pension certificate, and the suspension of payment of the pension by the Commissioner, are admitted. The amended answer further alleges that the special act of Congress granting the pension to Jerry Gordon for " 'loss of both legs by reason of wounds received while in the service of the United States as a teamster at the second battle of Bull Run, Virginia,' was obtained by fraud, in that no such wounds were received or incurred by said Jerry Gordon while in the service of the United States at the second battle of Bull Run, as falsely alleged in the petition of said Jerry Gordon to Congress for a pension, or at any time, nor were such wounds incurred while in the service of the United States at any other time or place, and, on the contrary, the amputation of the legs of said Jerry Gordon was done at a hospital in the city of Washington, in the District of Columbia, and was necessitated by gangrene, and not by any wound or injury incurred in the line of duty as a teamster while in the service of the government of the United States." To the amended answer, appellant demurred. This demurrer was subsequently overruled, and appellant was granted leave to traverse the amended answer. With-

UNITED STATES ex rel. LAWS v. DAVENPORT.      505

D. C.]                    Opinion of the Court.

in time, the traverse was filed. Appellee thereafter moved to
strike out the traverse and to dismiss the petition. This motion
was sustained by the court. From the judgment of dismissal,
the case comes here on appeal.

*Mr. Lemuel Fugitt* for the appellant.

*Mr. Daniel W. Baker,* United States Attorney for the Dis-
trict of Columbia, *Mr. Reginald S. Huidekoper,* and *Mr. F.
Sprigg Perry,* Assistants, for the appellee.

.Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellant relies upon the following assignments of error:
"1. Setting aside of judgment of June 4, 1909.
"2. Overruling relator's demurrer to respondent's amended
answer.
"3. Striking out relator's traverse.
"4. Dismissing relator's petition."
The first assignment of error presents a question not sub-
mitted to the court below. Hence, it is not properly before us
for consideration. It may be suggested, however, that no error
was committed by the court in vacating this order. The de-
cree was set aside during the term at which it was entered.
A court has full control of its judgments, orders, and decrees
during the term at which they are rendered or entered of record.
Quoting from the opinion in *Bronson* v. *Schulten,* 104 U. S.
410, 26 L. ed. 797: "It is a general rule of the law that all
the judgments, decrees, or other orders of the courts, however
conclusive in their character, are under the control of the court
which pronounces them, during the term at which they are
rendered or entered of record, and they may then be set aside,
vacated, modified, or annulled by that court." The absolute
power of a court over its judgments during the term is well
expressed in Freeman on Judgments, 4th ed. sec. 103, as fol-
lows: "During the term at which a judgment was rendered,
the power of the court over it is so absolute that it may vacate

.506    UNITED STATES ex rel. LAWS v. DAVENPORT.

Opinion of the Court.    [34 App.

it on its own motion, and whether on its own motion or not, without requiring notice to be given to the party to be affected by its order."

The second and third assignments of error may be considered together. They both relate to the sufficiency of appellee's amended answer. Appellant's demurrer admitted the charge of fraud contained in the answer, and the traverse did not deny it. Hence, appellant stood in a position where the right to the writ could not be maintained upon any theory of the case. The appellant is here seeking the aid of a writ of mandamus to compel the appellee to pay an accrued pension for injuries which she baldly admits her husband never received. The mere fact that Gordon successfully deceived Congress into passing the original act for his relief, and for a number of years fraudulently collected money from the government, to which he was not entitled, furnishes no basis whatever for a reinstatement of the claim. No court will permit itself knowingly to become the instrument through which an attempted fraud may be perpetrated. To be entitled to the writ, the appellant is required to establish not only a specific legal right, but the lack of a legal remedy. No legal right can be founded in fraud. Where there is no right, it is unnecessary to inquire for the remedy. By appellant's own admissions, this claim is so tainted as to justify any court in refusing to extend relief through the exercise of the high and extraordinary powers invoked by the writ of mandamus.

This court had occasion to consider this question in a similar case (*Garfield* v. *United States,* 31 App. D. C. 332), where the lower court had directed that a writ of mandamus issue against the Secretary of the Interior, commanding him to restore the relators to the rolls of citizenship of the Creek Indian Nation. In that case fraud on the part of the relators in procuring their enrolment was charged in the answer upon information and belief. Here the charge is positively made. Relators demurred to the answer. This court, in holding that the demurrer constituted an admission of fraud, and that judgment dismissing the petition on the face of the record should have been entered,

said: "The writ of mandamus is not a writ of right, and will issue only in the exercise of the sound discretion of the court. It will not issue where no right is shown to exist, nor will it issue to perpetuate a fraud. In High on Extraordinary Legal Remedies, sec. 26, it is said: 'It is important that a person seeking the aid of a mandamus for the enforcement of his rights should come into court with clean hands; and, where the proceedings have been tainted with fraud and corruption, the relief will be denied, however meritorious the application may be on other grounds.' A similar rule is announced in Spelling on Injunctions & Extraordinary Remedies, sec. 1380: 'While the remedy by mandamus is not equitable, but strictly legal, yet, by analogy to the principles prevailing in courts of equity, it is a uniform requirement that the relator, in seeking this remedy, must come into court with clean hands. If the proceedings have been tainted with fraud, or if the relator has, through his neglect, lost the benefit of a legal remedy to which he was once entitled, relief will be denied, however meritorious the proceeding may be on other grounds.' The principles above announced are supported in *People ex rel. Wood* v. *Board of Assessors,* 137 N. Y. 201, 33 N. E. 145; *People ex rel. Durant Land & Improv. Co.* v. *Jeroloman,* 139 N. Y. 14, 34 N. E. 726; *Com. ex rel. Vandyke* v. *Henry,* 49 Pa. 530; *State ex rel. McBride* v. *Phillips County,* 26 Kan. 419; and *State ex rel. McClellan* v. *Graves,* 19 Md. 351, 81 Am. Dec. 639."

A number of other matters were presented at bar, which need not be considered, since the court below was fully justified in entering an order of dismissal on the face of the record. The judgment is affirmed, with costs, and it is so ordered.

*Affirmed.*

A motion by appellant for a rehearing was denied April 5, 1910, and on April 11, 1910, an application by the appellant for a writ of error to the Supreme Court of the United States was denied.