ELIZABETH H. MITCHELL *v.* A. SIDNEY MITCHELL, Ex'or, &c.

1. HUSBAND AND WIFE: WIFE ENTITLED TO MONEY AS HER SEPARATE ESTATE UNDER THE ACT OF 1839.—Money is embraced in the legal term "property," and hence is within the provisions of the first section of the Married Woman's Law, of 1839, which enacts, "that any married woman may become seised or possessed of any property, real or personal, by direct bequest, demise, gift, purchase, or distribution, in her own name, and as of her own property."

2. TRUSTS AND TRUSTEE: DETERMINATION OF TRUSTS: RIGHT OF CESTUI QUE TRUST TO SUE AT LAW.—After the purpose of a trust has ceased, or been accomplished, the trust no longer continues: and the *cestui que trust* may maintain an action at law for the trust property, without any formal conveyance of the legal title by the trustee.   See 1 Kelly R. 388; 2 Bailey R. 330.

3. HUSBAND AND WIFE: RIGHT OF WIFE TO SUE HUSBAND'S EX'OR.—The reception by the husband of money belonging to the wife, under the Act of 1839, does not create a trust, which is only cognizable in a court of equity: in such a case, the husband is agent for the wife, in whom the legal title to the money is vested, and upon the husband's death she may maintain an action at law against his executor to recover it.

ERROR to the Circuit Court of Madison county. Hon. E. G. Henry, judge.

*T. C. Tupper*, for plaintiff in error.

The declaration avers that A. J. D. Mitchell, husband of plaintiff, had and received $2000, to and for the sole and separate use of plaintiff, at the time of their marriage; that this money was given to and belonged to plaintiff, and was delivered to said A. J. D. Mitchell at that time; that he retained this money (except $800) till his death, when it went into the hands of defendant, his executor.

To this declaration a general demurrer was filed, which was sustained by the court below, and judgment rendered for defendant.

This judgment was erroneous, because: 1. Under the Act of 1839, this money was the personal property of the wife, which, on the death of her husband, was her separate estate, and not a part of the estate of her husband. 2. If it be held that money is not included in the statute, as reserved to the wife, to be held as separate estate, still, under the common law, this money was a gift to her sole and separate use; and she is entitled to it as against her husband's representatives; and there being no trust to be executed, and the amount being fixed and certain, she is entitled to her action at law to recover it.

I. This money is included in the woman's law of 1839. The language of the act is: "Any married woman may become seised or possessed of any property, real or personal, by direct bequest, demise, gift, purchase, or distribution, in her own name, and as of her own property."

Money is considered, by our laws, as personal property. It is so considered in all the legislation of the State, in reference to the estate of decedents. The administrator, or executor, must return

the money of the deceased in the inventory of his personal estate. Our criminal laws also give it the same definition. That is, among the definitions of personal property, we find the word "effects," which assuredly includes money.

I am not aware that this court has directly decided the question, whether money is included in the phrase, "any property," of which a married woman may be seised in her own right, under the Act of 1839. The case of *Lowery* v. *Craig*, 30 Miss. R. 19, is not a decision in point (cited by defendant's counsel). There it was held, that choses in action were not enumerated or included in the act, and that the right of the wife to such choses, still remained, unless the same were reduced to possession by the common law.

It has been held that money, arising from the profits of the wife's estate, held under the act, goes into the husband's estate; but this is a very different question.

The new code, I believe, was not intended to enlarge the rights of married women, as to the kind and description of property reserved to them under the previous law; yet it declares that she may hold a separate estate in "every species and description of property, whether consisting of real or personal estate, and all money, rights and credits," &c. Rev. Code, 335.

It may not be necessary for the court to decide this point in this case; but I trust it will be done, and that an important question will be settled.

II. Aside from the statute, this money is the separate property of the wife at common law.

The money was delivered to the husband, to and for the sole and separate use of the wife.

There is no set form of words necessary to create a separate estate in the wife. Any terms which show a manifest intention to create such separate estate are sufficient. *Taylor* v. *Stone*, 13 S. & M. 652.

But it is insisted that the husband was a trustee, and, at his death, his executor became trustee for plaintiff. But does it necessarily follow that, because the husband was trustee for his wife, on his death, his executor, taking possession of the trust fund, constituted the latter a trustee, and the widow his *cestui que trust?* I think not. The executor has no right or claim to this fund; it belongs exclusively to the widow.

But grant that the defendant, as executor of the husband, stands in the relation of trustee, and that plaintiff is *cestui que trust*, this is one of that class of cases where the *cestui que trust* has his action at law against the trustee. Why go into chancery? There is no trust to be executed, except to pay the money, and the amount to be paid is fixed and certain. Where such are the facts, it is well settled, that an action at law for money had and received, may be maintained. See Chitty on Contracts, marg. page 258–9, and instances cited where trustees are liable to such actions. Also Hill on Trustees, 547.

Again. A *feme covert*, having separate estate, acts, with regard to it, as if she were a *feme sole*. See Sanders on Uses and Trusts, marg. page 344, and authorities. Also *Frost* v. *Doyle*, 7 Sm. & Mar. 75. That is to say, the same rights attach to her, in reference to this property, as if she were a *feme sole*.

The declaration alleges that this gift was made, "to the sole and separate use," of the wife. Even without such expression, and considering the money given as a wedding present, a gift to her separate use would be presumed. Clancy on Rights, 278.

Where the gifts were not from the husband, and were given both before and after marriage, and were claimed by the husband's representative (as in this case), the wife was held to be entitled to them in her own right. Clancy, 278–9, citing and commenting on *Graham* v. *Lord Londonderry*, 3 Atk. 393, *q. v.*

*H. A. H. Lawson,* for defendant in error.

The complaint alleges that, at the time of the marriage of the plaintiff with defendant's testator, in 1851, her then husband, received, for her sole and separate use, the sum of $2000.

Her husband having died, suit is brought against his executor, to recover the amount. To this complaint a demurrer was filed, which was sustained by the court, and hence this writ of error is sued out to this court.

The first question is, did the money, after its reception by the husband, belong to him by virtue of his marriage? The 1st section of the Act of 1839, permits any married woman to become seised or possessed of any property, real or personal. Under the 2d and 3d sections, her slaves and their increase are preserved to

her, but no other property. Hutch. Code, 497. Under the law of 1846, her power to hold separate estate is so far changed as to give her the rents and profits of her real estate, and the products and proceeds of the labor of all slaves owned by her. And this law empowers her, if she owns and carries on a plantation, to hold in her own name all such stock, farming implements, &c., as may be necessary to carry it on successfully. Hutch. Code, 498.

The money handed her husband, for her sole and separate use, is not such property as is protected by the statute. Her money, at common law, was the husband's, the moment he got possession of it. His rights remain exactly as they were at common law, except so far as they have been expressly taken away by statute.

The statute has not preserved to her the right to hold money as her separate property, unless it be the rents of the real estate, or the profits of her slaves. This money was neither the one or the other, and hence the statute does not preserve it to her. *Lyon et al.* v. *Knott et ux.*, 26 Miss. 548; 27 Ib. 830, 831. Money is not enumerated in the Statutes of either 1839 or 1846, and hence is not preserved to her. *Lowery and Wife* v. *Craig*, 30 Miss. R. 19. See also Opinion Book, at page 230, *Price* v. *Rimner et al.*

By the 1st section of the Act of 1831, permitting a married woman to become the owner of any property, real or personal, it has been decided that that law did not in any effect change the marital rights of the husband in his wife's real estate. *Baynton et ux.* v. *Finnall*, 4 Smedes & Marshall, 193. That law permits her to hold real estate in her own name, and as of her own property. Now, if this statute does not change the common law as to the real estate, it seems also that it would not change the common law as to any other property than that expressly named in the statute as being preserved to the wife. Money not being so enumerated, we conclude that it still belongs to the husband, as at common law.

Again. Is money either real or personal property ? We are to understand the language used by the Legislature in its common ordinary acceptation. A man may have a property in money, but that does not make money property, in its ordinary acceptation. Money is the standard of value fixed by the government, by which the value of all property is regulated. If money, in its ordinary

signification, does not mean property, then there is nothing in the law of either 1839 or 1846, which gives the wife the right to become possessed of money in her own right. Money cannot be levied on under execution, at common law, and sold. It is the standard of value, and does not admit of sale. The opinion in the case of *Ingraham & Reed* v. *McIntyre*, holds that promissory notes are not included in the term property.

2d. If money can be held by the husband, as trustee for his wife, and it be delivered over to him, as such trustee, then he has the legal title thereto, and his wife only the equitable. The money is currency, and intended to be circulated by the husband, or used for the wife's benefit. If then, the money do not remain in specie, the husband only becomes liable to the wife as trustee, not at law, but only in equity. The wife never had the legal title to the money, either in the husband's lifetime, or since. Her only remedy, whilst he lived, was in equity as trustee. And I cannot see how his death should give her a legal title to that to which she had only an equity. She must have the legal title, or she cannot maintain her suit.

The relation of trustee and *cestui que trust*, will not entitle the latter to sue the former for money had and received to his use. Chitty on Contracts, 622; also 191, 192, and 193.

If we permit suits at law to be maintained, to enforce the equities existing between trustees and *cestui que trusts*, we at once destroy all the distinction between courts of law and equity. We have, by our constitution, a separate tribunal for law cases, and another to enforce equitable rights.

We think there was no error in the decision, and the judgment should be affirmed.

HANDY, J., delivered the opinion of the court.

The declaration in this case alleges, that in the year 1851, at the time of the plaintiff's marriage with A. J. D. Mitchell, the defendant's testator, the said testator had and received, to and for the sole and separate use of the plaintiff, the sum of two thousand dollars, which sum was given and belonged to the plaintiff, and was delivered to the said testator, and was retained by him until his death, when it went into the hands of the defendant, his exe-

cutor; and demands judgment for the amount against the defendant.

To this, the defendant demurred generally, and the demmurer was sustained, and judgment rendered for the defendant, upon which the plaintiff took this writ of error.

The first ground taken in support of .the demurrer is, that the money claimed in the declaration became the property of the husband upon its delivery to him, and was not embraced within the provisions of our statutes, securing property to the sole and separate use of the *feme covert;* and it is insisted, that these statutes do not confer upon her the right to take and hold *money* to her separate use.

The first section of the Act of 1839 (Hutch. Dig. 496), provides, that "any married woman may become seised or possessed of any property, real or personal, by direct bequest, demise, gift, purchase, or distribution, in her own name, and as of her own property: *provided*, the same does not come from her husband, after coverture." The terms here employed, are very broad, comprehending any species of property, real or personal, capable of bequest, demise (devise), gift, purchase or distribution; and there can be no doubt but that *money* is embraced in the legal term *property.*

But the question is raised, whether money given to the wife, as her separate property, is within the spirit and policy of the statute; and it is insisted that it is not, because the statute, in its subsequent sections, makes provisions regulating the rights and interests of both husband and wife in *slaves*, secured to her as her sole and separate estate; thereby showing the kind of personal property intended to be secured to the wife, and excluding money, which is not enumerated, and is left without any regulation in relation to it.

But this position is manifestly not tenable. The right conferred by the first section, is general and unrestricted in its terms, and there is nothing in the subsequent sections which necessarily limits or abridges it. The object of it, doubtless, was to secure to married women any property which might be given to, or acquired by them, in their own right, and to place it beyond the power of disposition of the husband, and beyond liability for his debts; and this reason applies as well to other species of personal property as

to slaves. It applies as fully to the horses, mules, cattle, sheep, and other personal property, necessary for a plantation, as to the slaves which cultivate the crops upon it. But if the construction contended for be correct, she has no power to take such property to her separate use.

It is true that slaves are the subject of special provision in the subsequent sections of the statute, the reason of which most probably is, that slaves constitute a large portion of the personal property which would most generally be acquired by *femes covert;* and the peculiar nature of such property, and the care and management of it which the husband would necessarily have, were sufficient to require special provisions in relation to the respective interests of the wife and of the husband in them. But, whatever may have been the reason for these provisions in relation to slaves, the provisions are merely regulations with regard to one species of personal property, which a *feme covert* is empowered to take to her separate use, and cannot be held to abridge her power to take to her separate use other personal property, as conferred by the first section of the statute.

Again : it is said that, at all events, the money was held by the husband, as trustee for the wife, he having the legal, and she the equitable interest in it; and, therefore, that it could not be recovered from his executor, into whose hands it passed, or who became chargeable with it, in an action at law.

Conceding, for argument sake, that the money was in the hands of the husband, as trustee for his wife, upon his death the trust was determined, and all necessity for its continuance ceased. And it is clear that the trust continued only so long as was necessary to effect the purpose of the trust. *Coulter et al.* v. *Robertson*, 24 Miss. 341. And after the purpose of the trust had ceased to exist, or had been accomplished, it was competent for the *cestui que trust* to sue for, and recover the property at law. Ib. *Liptrot* v. *Holmes*, 1 Kelly (Ga.) 388; *Jones* v. *Cole*, 2 Bailey, 330. If it was a trust, it certainly ceased at the husband's death.

But it was not a case of trust such as is cognizable only in a court of equity. The money was the absolute property of the wife, which came to the hands of the husband. During the marriage, it was in his hands as her agent; and the only reason why she could

not have recovered it by action at law against him during his life, was that she could not sue him, even to recover a purely legal right, at law. Her right of action during the marriage was suspended; but upon his death, it existed in full force against his executor, into whose hands the money passed, and who became liable to her action for it if it was applied by the testator to his own use.

We are, therefore, of opinion that the demurrer was improperly sustained; and the judgment must be reversed, and the cause remanded for further proceedings.

NOTE.—The wife's choses in action go to the husband under the rules of the common law, and are not secured to the wife by the Acts of 1839 or 1846. *Lowery* v. *Craig,* 30 Miss. R. 19.

