Nettie J. Cary

*v.*

Ralph C. Slead *et al.*

*Opinion filed February 21, 1906—Rehearing denied April 5, 1906.*

1. Words—*definition of the word "survive."* Ordinarily the word "survive" means to live longer than some other individual, but it may mean to continue to live beyond a specified period, event or condition.

2. Wills—*when testamentary trust becomes passive and ceases.* Under the rule that all provisions of a will must be considered and compared with each other to find the testator's intention, a trust conditioned in one clause to continue in a married daughter's favor so long as she "remains a married woman" and in other clauses to terminate if she "survives her present husband," will, in case of divorce between the parties, at once terminate and become a passive trust such as the Statute of Uses would execute, where, from the whole will, it appears the sole object of the trust was to protect the property from the husband.

Appeal from the Circuit Court of Iroquois county; the Hon. Albert O. Marshall, Judge, presiding.

A. F. Goodyear, and T. G. Vennum, for appellant.

CHARLES M. HARL, FRANK L. HOOPER, and FREE P. MORRIS, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On September 29, 1902, Hiram Vennum died leaving a last will and testament, by which he devised to Ralph C. Slead, one of the appellees, a quarter section of land in Iroquois county in trust for appellant, Nettie J. Cary, under the name of Nettie Slead Cary, subject, however, to the annual payment to Nancy Slead, mother of appellant, of one dollar per acre during the natural life of said Nancy Slead. The paragraph devising the lands and creating the trust and providing for its duration is as follows:

"*Sixth*—I give and devise to my grandson, Ralph Slead, in trust, subject to the conditions hereinafter mentioned in clause 9 of this will, lots 6 and 7 of the N. W. ¼ of sec. 1 in Twp. 25, N. in R. 12, W. of the 2d P. M., in Iroquois county, Illinois. These premises shall be controlled by the said Ralph, who shall rent the same to the best advantage, keep the same in repair and pay all taxes legally assessed thereon. The net proceeds he shall annually pay to his sister, Nettie Slead Cary, to her only and not to any agent for her, and shall take her personal receipt therefor. This the said Ralph shall do so long as the said Nettie remains a married woman. Should the said Nettie survive her present husband, the said Ralph shall then convey the said premises to said Nettie absolutely and in fee, and I will that the said Nettie shall not, while she is the wife of her present husband, nor shall any one for her, have the power to sell, dispose of or do any act or thing which shall in any manner deprive her of the uses and benefits which I by this will intend she shall enjoy. Should she, against my will and desire, sell or dispose of the benefits or rights she has under this will, I declare that said sale shall have the effect to an-

nul my will so far as she is concerned, and what I have in this will given to her shall at once go to and become the absolute property of her brothers and sisters then surviving, share and share alike, the descendants of a deceased brother or sister taking a parent's portion in equal parts between them. If the said Nettie should not survive her present husband and should leave her surviving a child or children of her body, the said Ralph shall, at her death, convey said premises to her child or children in fee. Should the said Nettie not survive her said husband and should not leave a child or children of her body her surviving, then said premises shall go to the surviving brothers and sisters of said Nettie Slead Cary, including the said Ralph, share and share alike, the descendants of a deceased brother or sister taking a parent's portion in equal parts between them."

When the will was made and when Hiram Vennum died, appellant was the wife of Lester Cary, but on October 4, 1904, she procured a decree of divorce from him on a charge of extreme and repeated cruelty. By the divorce the marriage relation was dissolved and her property was freed from any marital or other rights of said Lester Cary. Appellant having ceased to be a married woman, all the active duties of the trustee in the management of the property and payment of the proceeds to appellant came to an end, and he thereupon surrendered to her the management and control of the property and she has since been in the sole and exclusive possession and management of the same. She filed her bill in this case to the March term, 1905, of the circuit court of Iroquois county against the appellees, who are her brothers and sisters and the trustee and a minor child of Ralph Slead, alleging the above facts and the claim of appellees to some interest in the lands as heirs or devisees or through a contingent remainder or executory devise, and praying the court to declare the trust at an end, and to require the trustee to convey the legal title of the lands to appellant in fee simple, subject to said annuity for the natural life of her mother.

The trustee, Ralph Slead, and Hattie T. Harl, a sister of appellant, filed a general demurrer to the bill, and the minor nephew, H. Darling Slead, by his guardian *ad litem,* filed a like demurrer. The court sustained the demurrers, and the appellant having elected to stand by her bill, it was dismissed, and she has brought the case here by appeal.

The decision of this case depends upon the question whether the provision, "should the said Nettie survive her present husband, the said Ralph shall then convey the said premises to said Nettie absolutely and in fee," meant that the trustee should convey the premises to the complainant only in case she survived or outlived the individual Lester Cary who was her husband when the will was made, or meant that she would be entitled to the conveyance if she was living after Lester Cary had ceased to be her husband, or, in other words, whether the testator had in mind the duration of the life of Lester Cary or his relation to complainant as husband. The fundamental rule in the construction of wills is, that the intention of the testator shall control unless it is in conflict with some established rule of law or public policy. In this case either view is not inconsistent with the law or public policy, and the only duty of the court is to ascertain the intention of the testator and to give effect to the scheme he had in mind for the disposition of his estate. (*Crerar* v. *Williams,* 145 Ill. 625; *Greenwood* v. *Greenwood,* 178 id. 387.) The intention is to be ascertained from the language of the will, and is not some unexpressed intention which the court might think existed in the testator's mind. But in determining such intention a single sentence or clause is not to be considered alone. The entire will is to be considered and all its provisions compared and given due weight in order to arrive at the general plan and intention of the testator. (*Hubbard* v. *Hubbard,* 198 Ill. 621.) Ordinarily the word "survive" means to live longer than some other individual, but it may mean to continue to live beyond a specified period, event or condition.

The provisions of the will which throw light on the question as to the meaning and intention of. the testator are these: Careful provisions were made that so long as the complainant was a married woman the premises should be controlled by the trustee, who should rent them, keep them in repair, pay the taxes and annually pay the proceeds to the complainant, and that such payments should be made to her only, and not to any agent for her, upon her personal receipt. These duties were to terminate when the complainant ceased to be a married woman. Complainant ceased to be a married woman and the trust immediately became a passive trust, which the Statute of Uses would ordinarily execute. The equitable and legal estate would under that statute unite in the complainant and the legal estate vest in her, and there is nothing in the will which, in our judgment, prevents this result. It was also provided that she should not, while she was the wife of the person who was then her husband, have power to sell or dispose of her interests or do any act or thing which would deprive her of the benefits which the testator intended she should enjoy under the will, and any sale or disposition was to have the effect to annul the will, and the property was then given to her brothers and sisters and their descendants. The testator also provided against the husband inheriting from complainant by the provisions that if she did not survive him and should leave a child or children of her body, the trustee should convey the premises to such child or children in fee, and if she did not survive him and did not leave a child or children, the premises should go to the surviving brothers and sisters or their descendants. The testator devised a section of land to his four grandchildren, giving to each a quarter section, and created the trust only as to this one.

No mention whatever is made of Lester Cary as an individual or dissevered from his relation to the complainant as husband, and it is clear that the only purpose of these provisions was to protect the property devised from any

marital rights of Lester Cary as husband of the complainant, or any benefit to him or inheritance by him. They were not designed for the protection of the complainant against herself or her improvidence or want of judgment, because the trustee was directed to convey to her absolutely and in fee if she survived her "present husband." They were not made merely because the complainant was a married woman, but only for her protection while she was the wife of the individual who was then her husband. The testator meant either that the complainant should survive the marriage or the individual, and if he had referred to the individual he would naturally have provided for a conveyance if she survived Lester Cary, or would have used some language indicating that intention. It is perfectly clear that it was not the physical existence of Lester Cary, but his relation to the complainant as husband, that induced the testator to create the trust. If the complainant was living after Lester Cary ceased to be her husband every purpose of the will would be fulfilled by a conveyance to her, and if the testator had intended to use the word "survive" in the sense of outliving the person Lester Cary we think he would have used different language. It will be seen from the will, considered as a whole, that its provisions were inspired by a distrust or dislike of Lester Cary, and were framed with the single purpose of preventing his receiving any benefits from the devise.

It is suggested by counsel, in opposition to this view, that the complainant may re-marry Lester Cary and thereby defeat the purpose of the testator. Of course there is no absolute security against such an occurrence while he is living, but we do not feel at liberty to assume that an event so improbable will occur or that a possibility of that kind would be a sufficient ground for giving a different construction to the will.

The decree is reversed and the cause is remanded to the circuit court with directions to overrule the demurrers.

*Reversed and remanded.*