IN RE ESTATE OF PETER CORNILS, Deceased.

LIZZIE JACOBS v. WILLIAM CORNILS, WM. CORNILS, Trustee, et al., Appellants.

Wills: BEQUEST IN TRUST: TERMINATION OF TRUST: RIGHT OF BENE-FICIARY. In equity a trust will be cancelled when the object for which it was created has ceased to exist. Thus where a father during his life time assisted in the support of a married daughter and her children, because her husband was a drinking man and had no property, a bequest by the father in trust for the benefit of the

daughter during the life of the husband, and upon his death to be paid to her, was intended to preserve the trust to her as against the husband, and upon a divorce from her husband the trust terminated and she was entitled to receive the bequest.

*Appeal from Woodbury District Court.*—HON. DAVID MOULD, Judge.

FRIDAY, OCTOBER 23, 1914.

LIZZIE JACOBS, an heir and devisee of Peter Cornils, deceased, filed a petition for the construction of the will of the deceased, and to this the trustees appointed by the will demurred. This demurrer was overruled, and they thereafter filed an answer. On the issues thus joined the case was tried to the court, resulting in an order finding that the prayer of the petition should be sustained and petitioner was awarded all the property given her in trust by the will. The trustees and other parties in interest appeal.—*Affirmed.*

*E. B. Walling* and *Griffin & Page,* for appellant.

*C. N. Jepson* and *E. C. Logan,* for appellee.

DEEMER, J.—Peter Cornils died testate in Woodbury county, Iowa, some time in the year 1903, and on October 20th of the same year, his will was duly admitted to probate. Among other things his will made the following provision for the appellee, Lizzie Jacobs:

First: It is my will that all of my just debts and all of the expenses of my last illness to be paid in full, subject thereto I give, devise and bequeath all of my property both real and personal monies and credits to my beloved wife, Erkel Cornils, to have and to hold with all rents and profits therefrom, during the term of her natural life.

Second: Upon the death of my beloved wife, the said Erkel Cornils, it is my will that all of the remainder of my property, at the time of her death shall be divided equally

between all of my beloved children share and share alike, subject only to the restrictions as to the share of my daughter Lizzie Jacobs, as hereinafter mentioned, it being my intention that my son William Cornils, one-seventh, to my son Edward Cornils, one-seventh; to my daughter Mary Zeglin, one-seventh, to my daughter Katie Schaalhause, one-seventh, to my daughter Agnes Cornils, one-seventh, to my son Charles Cornils one-seventh, and to my daughter Lizzie Jacobs, one-seventh. The said one-seventh as willed and bequeathed to my daughter, Lizzie Jacobs, shall be held in trust for her use only during the life of her husband, Andrew Jacobs, the interest on her one-seventh interest to be paid annually to her by trustee of her interest, said interest thereon to be at rate of five per cent. per annum. Upon the death of her husband, Andrew Jacobs, her full share one-seventh shall be paid to her, but in the event of her death prior to the death of her husband, the said Andrew Jacobs, then and in that event, it is my will that her full share, being one-seventh of the remainder of my estate on the death of my wife, Erkel Cornils, shall be divided among the children of the body of my daughter, the said Lizzie Jacobs.

Third: It is my will and I hereby appoint as trustee of the share of the said Lizzie Jacobs my son, William Cornils.

I hereby appoint and nominate my son, Edward Cornils, to be the executor of this my last will and testament and exonerate him from giving bonds in any amount.

At the time of testator's death, Andrew Jacobs, the husband of Lizzie, was still alive, but during the year 1911 the wife obtained a divorce from him on the grounds of habitual drunkenness and cruel and inhuman treatment. She was also awarded the custody of their four minor children, who are defendants or respondents herein. Testator's widow died some time in the year 1911, and at the time of his death Lizzie and Andrew Jacobs had three children. After his death, and before the death of his widow, another child was born. Lizzie Jacobs, the petitioner, claims that, in virtue of her divorce from her husband, the trust created by the will, having been accomplished and terminated, she became entitled to the entire fund for the reason that, the object of the trust having

been accomplished, the entire property vested in her, and the trial court sustained this contention. The appeal is from this ruling.

That the estate devised to Lizzie Jacobs was in trust is, of course, conceded; but it is a well-established rule in equity that a trust will be canceled if the object for which it was created has ceased to exist. See Underhill on Trusts & Trustees (4th Ed.) pages 97, 98. As illustrating the rule, the following cases are cited by the author: *Culbertson's Appeal,* 76 Pa. 145; *Schlessinger v. Mallard,* 70 Cal. 326 (11 Pac. 728); *Ex parte Stone,* 138 Mass. 476; *Mitchell v. Mitchell,* 35 Miss. 108; *Wilt v. Carroll,* 37 S. C. 388 (16 S. E. 130); *Roberts v. Moseley,* 51 Mo. 285; *Morgan v. Moore,* 3 Gray (Mass.) 323; *Koenig's Appeal,* 57 Pa. 352; *Pillow v. Wade,* 31 Ark. 678; *Nightingale v. Nightingale,* 13 R. I. 113. See, also, as sustaining the same doctrine, *In re Lee's Estate,* 207 Pa. 218 (56 Atl. 425); *Cary v. Slead,* 220 Ill. 508 (77 N. E. 234); Hill on Trustees, section 239 et seq.; Perry on Trusts & Trustees, vol. 2, page 920.

In *Koenig's* case, it is said:

It cannot be doubted that the trust was created for a single purpose. That was to protect the property given at first absolutely to Mrs. Smith, against her husband. . . . But if the sole purpose of the trust was to protect the wife's estate against her husband, it is manifest that purpose was fully accomplished when the coverture ceased. The divorce of the parties terminated all possibility of the husband's interference with the property bequeathed and devised to the wife as completely as his death would have done. Then why should the trust be continued after its exigencies have been met? It matters not what may be the nominal duration of an estate given by will to a trustee. It continues in equity no longer than the thing sought to be secured by the trust demands. . . . There can be no doubt that a trust for the separate use of a married woman ceases on the death of her husband, or on her divorce from him, and this though vested in terms in the trustee in fee, and though he be required to collect and pay over the rents and interest, not because

such a trust is not an active one, but because it is special, and either the death or divorce renders its continuance unnecessary. If, then, the trust in Christian Koenig was instituted, as we think the will clearly shows, solely to protect the appellee's property against her husband, it terminated when by the divorce it became useless as a means of. such protection.

In re Lee's Estate follows *Koenig's* case, and is very much like the one now before us, in that in the event of the death of the wife before the demise of the husband, the property was to go to her children. In *Cary v. Slead, supra,* the Supreme Court of Illinois said:

The testator devised a section of land to his four grandchildren, giving to each a quarter section, and created the trust only as to this one. No mention . . . is made of Lester Cary as an individual or dissevered from his relation to the complainant as husband, and it is clear that the only purpose of these provisions was to protect the property devised from any marital rights of Lester Cary as husband of the complainant, or any benefit to him or inheritance by him. They were not designed for the protection of the complainant against herself, or her improvidence, or want of judgment, because the trustee was directed to convey to her absolutely and in fee if she survived her 'present husband.' They were not made merely because the complainant was a married woman, but only for her protection while she was the wife of the individual who was then her husband. The testator meant either that the complainant should survive the marriage or the individual, and if he had referred to the individual, he would naturally have provided for a conveyance if she survived Lester Cary, or would have used some language indicating that intention. It is perfectly clear that it was not the physical existence of Lester Cary, but his relation to the complainant as husband, that induced the testator to create the trust. If the complainant was living after Lester Cary ceased to be her husband, every purpose of the will would be fulfilled by a conveyance to her and if the testator had intended to use the word 'survive' in the sense of outliving the person, Lester Cary, we think he would have used different language. It will be seen from the will, con-

sidered as a whole, that its provisions were inspired by a distrust or dislike of Lester Cary, and were framed with the single purpose of preventing his receiving any benefits from the devise.

An examination of the cases cited leads us to the conclusion that the whole matter depends upon the intent of the testator. If the trust was created to protect the wife's estate against her hubsand, and to preserve the property to herself and children, it is manifest that the death of the husband renders the continuance of the trust entirely unnecessary, and according to the overwhelming weight of authority, a divorce to the wife is quite as effectual as the husband's death.

The testimony shows that Andrew Jacobs was a harddrinking man, and that he and his wife did not get along together—all of which was known to the testator at the time he made his will. He had no property, and accumulated nothing during his married life. He contributed little to the support of his family, and since the divorce he has done nothing for his children. Testator contributed to the support of his daughter and her children during his lifetime, and the testimony shows that the property was devised in trust to protect the daughter and her children. The will itself shows that the trust should cease on the death of the beneficiary's husband, and the full share provided therein for the wife should be paid to and vest in the wife, Lizzie Jacobs. It was also provided that in the event she died before her husband, the share so devised should pass to the children of her body. As the devise was in trust to preserve the same as against the husband of the beneficiary, and was to cease upon his death, it is manifest that a divorce from him would quite as effectively deprive him of any control of the property as would his death; and we are of opinion that upon the granting of the divorce the purpose of the trust failed, and that the beneficiary was entitled to have the property free of the trust.

It is suggested for appellant that the effect of this ruling

might be to deprive the Jacobs children of a right to the property. It will be observed that their rights were contingent upon the death of their mother before their father's death. As we have construed this will to mean that divorce is the equivalent of death in terminating the trust, the same construction must obtain throughout, and in determining the children's rights it should be held that the divorce was the equivalent of the husband's death, and as the wife is still living, she is entitled to the property.

The Supreme Court of Pennsylvania, in the cases cited, found no difficulty in awarding the property to the beneficiary, although her children had a contingent interest under the will. We have no doubt that testator intended the trust to cease, not only upon the death of his son-in-law, but also whenever, by divorce or otherwise, his relations with his (testator's) daughter ceased.

The trial court was right in ordering the trust property turned over to Lizzie Jacobs, and its order and judgment are —*Affirmed.*

LADD, C. J., and GAYNOR and WITHROW, JJ., concur.