LAWRENCE E. McNEER ET AL., APPELLANTS, V. ROBERT
PATRICK ET AL., APPELLEES.

FILED MAY 17, 1913.     No. 17,187.

1. **Trust Deed: CONSTRUCTION.** P., a resident of the state of Kentucky,
   conveyed land in that state to I. as trustee for L., the recently
   married daughter of P. The conveyance to I. recited that it was
   in trust for the sole and exclusive use and benefit of L. and her
   heirs forever. *Held,* That the placing of the title in I. for the
   benefit of L. was for the sole purpose of protecting her against
   her husband and his creditors, and did not vest any estate in L.'s
   children; the words, "her heirs," being technical words of in-
   heritance merely, and not words of purchase.

2. ———: ———: LAW GOVERNING. And the lands in controversy,
   situated in this state, having been purchased with the proceeds
   derived from the sale of the Kentucky land, in accordance with
   the terms of the deed from P. to I. as trustee for L., the rights
   of L., under her deed to the Nebraska land, must be determined
   by the laws of Kentucky, and the decisions of the supreme court
   of that state construing the same, at the time the deed from P.
   was executed.

3. ———: ———: TERMINATION OF TRUST. And L. having subse-
   quently become discovert by the divorce of herself and husband,
   the reason for the trust no longer existed, and the trust estate
   terminated; and, no other trustee having been appointed for her,
   thenceforward she was vested with the fee simple title to the
   lands so conveyed, with full power to sell and convey the same.

APPEAL from the district court for Pawnee county:
JOHN B. RAPER, JUDGE. *Affirmed.*

*George J. Humbert, J. C. Dort* and *Tibbets, Morey &
Fuller,* for appellants.

*Story & Story* and *Burkett, Wilson & Brown, contra.*

FAWCETT, J.

This suit was instituted in the district court for Pawnee
county by the sons and only heirs at law of Lavinia W.
McNeer, deceased, to establish their title to and to re-

cover the possession of the north half of the southeast quarter and the south half of the northeast quarter of section 34, township 2, range 11, in said county. From a decree dismissing their action and cross-action, they prosecute this appeal.

The controlling question in the case is the construction to be given to a deed executed by Watts Parker, the father of Lavinia (Mrs. McNeer), August 30, 1872, to lands in the state of Kentucky. Lavinia had become the wife of A. D. McNeer seven months prior to the execution of the deed by her father. The deed was as follows:

"This indenture, made this 30th day of August, 1872, between Watts Parker of Jefferson county, Kentucky, of the first part, Reuben E. Parker of county and state aforesaid, of the second part, and John Q. Irwin of county of Ballard and state aforesaid of the third part, trustee for Lavinia W. McNeair (wife of A. D. McNeair) of Jefferson county, Kentucky, witnesseth, that the said Watts Parker for and in consideration of the sum of eight thousand five hundred dollars in hand paid to him as follows, viz., five thousand dollars by the said Reuben E. Parker and three thousand five hundred dollars by the said Lavinia W. McNeair the receipt of all of which is hereby acknowledged by the said Watts Parker, hath and doeth hereby grant, bargain, sell and convey unto the said second and third parties (certain lands therein described), to have and to hold the said three tracts or parcels of land to said Reuben E. Parker and John Q. Irwin in the following proportions and conditions, namely, to the said Reuben E. Parker 7-12ths thereof for himself, his heirs and assigns forever, and the remaining 5-12ths thereof is conveyed to said John Q. Irwin in trust for the sole and exclusive use and benefit of the aforesaid Lavinia W. McNeair and her heirs forever.

"It is expressly understood that the said Lavinia shall use and occupy said five-twelfths of said land hereby intended to be conveyed to her and said Reuben E. Parker tenants in common in the proportions aforesaid; that

is, 7-12ths to said Reuben E. and 5-12ths to Lavinia W., and should she and her said trustee, John Q. Irwin, at any time think it would be to the interest and benefit of the said Lavinia W. to sell her interests in the above described three tracts of land they, the said John Q. and Lavinia, shall have the same to the purchaser or purchasers, provided nevertheless that the purchase money received therefor shall be reinvested in real estate such as said John Q. and Lavinia W. may select, and the land so purchased shall be conveyed to and held by a trustee for the use and benefit of said Lavinia on the same terms and conditions that the land herein and hereby conveyed to John Q. as trustee is held, to have and to hold the same in the proportions aforesaid; that is, 7-12ths to the said Reuben E. and 5-12ths to John Q., trustee, as aforesaid, as tenants in common with covenants of general warranty."

Subsequently, by deeds from each to the other, the regularity of which is not questioned, the lands covered by the deed of Mr. Parker were partitioned. Thereafter, in accordance with the provisions of the deed for sale and reinvestment, Lavinia and her husband, Andrew, acting as her trustee (Mr. Irwin being then deceased), sold her interest in the Kentucky land and reinvested the proceeds in the Pawnee county land. The Pawnee county land was conveyed to Andrew McNeer, husband of Lavinia, as trustee, by a deed containing the terms and conditions of the original deed from Mr. Parker. In 1886 Lavinia and Andrew McNeer were divorced, and a few months later Andrew married another woman. On October 16, 1888, Lavinia sold and conveyed the land to one Miller, from whom it passed by mesne conveyances to defendant Robert Patrick. On June 28, 1908, Lavinia died without having remarried.

The decision of this case rests upon the construction to be given to the deed of Mr. Parker in 1872, the question being: By that deed, did Lavinia take a life estate only, with remainder to her children, or did she take an

estate in fee simple?  That is to say, did the language of the deed, "for the sole and exclusive use and benefit of the aforesaid Lavinia W. McNeair and her heirs forever," give her children a vested interest in remainder in the property conveyed?  The district court held that the terms of the deed to Irwin in trust for the sole and exclusive use and benefit of Lavinia and her heirs forever, and the subsequent deed of partition from Reuben, "created a trust estate for the sole and separate use and benefit of Lavinia W. McNeer, and that she became the *cestui que trust* to the fee simple title, and that the word 'heirs' as used in the deeds was merely a technical word of inheritance, and not a word of purchase, as to said Kentucky lands."  The court made the same finding as to the word "heirs" in the deed to the Pawnee county land, and further found that the deed from Lavinia to Miller, made in October, 1888, after she had been divorced from her husband, conveyed a fee simple title to Miller; and that the subsequent deed from Miller to McAllister and from McAllister to defendant Patrick conveyed to the latter a fee simple title.  In accordance with the findings, the decree dismissed the action of plaintiff and the cross-action of his two brothers at their cost.

The lands in controversy having been purchased with the proceeds derived from the sale of the Kentucky land, under the terms of the deed from her father, we think the rights of Mrs. McNeer, under her deed to the Pawnee county land, must be determined by the laws of Kentucky, and the decisions of the supreme court of that state construing the same, at the time the deed from Mr. Parker was executed.  Upon the trial certain sections of the statutes of Kentucky of 1873, and a number of decisions from the supreme court of that state, were introduced in evidence.  Section 1, art. II, ch. 52, p. 518, provides:  "Marriage shall give to the husband, during the life of the wife, no estate or interest in her real estate, including chattels real, owned at the time, or acquired by her after marriage, except the use thereof, with power to

rent the real estate for not more than three years at a time, and receive the rent." Section 17, art. IV, ch. 52, p. 532, provides: "Separate estates and trust estates conveyed or devised to married women, may be sold and conveyed in the same manner as if such estates had been conveyed or devised absolutely, if there be nothing in the deed or will under which they are held forbidding the same, and if the trustee and husband unite with the wife in the conveyance. But her interest shall be the same in the proceeds as it was in the estate." Section 7, art. I, ch. 63, p. 585, provides: "Unless a different purpose appear by express words or necessary inference, every estate in land created by deed or will, without words of inheritance, shall be deemed a fee simple, or such other estate as the grantor or testator had power to dispose of." Section 8, art. I, ch. 63, p. 585, provides: "All estates heretofore or hereafter created, which, in former times, would have been deemed estates in tail, shall henceforth be held to be estates in fee simple; and every limitation on such an estate shall be held valid, if the same would be valid when limited upon an estate in fee simple."

Appellants contend that the word "heirs" in the Parker deed should be construed as a word of purchase, because it is the only word in the deed to show where the grantor intended the fee to go after the life use of Lavinia McNeer should have terminated; that effect must be given to the intention of the grantor. The trouble with appellants' contention is, there is nothing whatever in the deed under consideration which in any manner limits the use of Mrs. McNeer to the term of her life. Those words, or words akin to them, are not to be found in the deed. The deed recites that it is an indenture between the grantor, of the first part, the son Reuben, of the second part, and John Q. Irwin, of the third part, "trustee for Lavinia W. McNeair (wife of A. D. McNeair)." The habendum recites that Reuben and Irwin are to have and to hold in the proportion of seven-twelfths and five-twelfths; that the five-twelfths is conveyed to Irwin "in trust for the sole and

exclusive use and benefit" of Lavinia and her heirs forever; no limitation here as to Lavinia's life. The deed then recites that it is expressly understood that Lavinia shall use and occupy said five-twelfths of said land "hereby intended to be conveyed to her and said Reuben E. Parker as tenants in common in the proportions aforesaid"—a distinct recital that the intention is to convey the five-twelfths to her and thereby make her a tenant in common with her brother Reuben. It then gives Lavinia and her trustee the right, at any time they think it would be to the interest of Lavinia, to sell her interest in the land conveyed, and reinvest it in other real estate, which latter estate, when so taken, shall be conveyed to and held by the trustee "for the use and benefit of said Lavinia," on the same terms and conditions as those imposed by the father's deed. To our mind, the use of the words, "Lavinia W. McNeair and her heirs forever," instead of showing an intention to limit Lavinia to a life estate, was intended to show that he was conveying to her an absolute and unqualified estate, with the right of inheritance; in other words, a fee simple estate. It is conceded that the deed was in fact a gift from the father to the daughter. When we take into account the relation of the parties and the statute of Kentucky above quoted, it is apparent that the father was giving this land to Lavinia as a marriage gift or portion, and that the deed was made to a trustee, instead of to her direct, for the purpose of giving her the land in such a way that she could have the free and full use of the same as against the right to the use thereof by the husband, which he would have if the deed were made to her direct; and for the purpose also of enabling her to hold it free from his contracts or debts. That this was the only reason why the deed was made to a trustee is too apparent to admit of any other theory.

In *Carter v. Carter*, 2 Bush (Ky.) 288, it is held: "The power of the husband to lease and receive the rent of his wife's land does not apply to land held by a trustee for the *'sole and separate use'* of the wife." In the opinion

it is said: "The object of such a conveyance, as in this case, was to preserve the use to the wife from the control of her husband, or the interference of his creditors." In *Lane v. Lane*, 106 Ky. 530, the parties to the deed were stated to be John L. Lane, party of the first part, "and Daniel Lane and his heirs after him, party of the second part." The deed further recited: And the grantor "does hereby sell and convey to the party of the second part, his heirs and assigns, the following property (etc.), to have and to hold unto the party of the second part, his heirs and assigns, forever." The court said that they regarded the word "heirs," in the clause where it first occurs, as a word of limitation merely, "denoting the inheritable quality of the estate conveyed, and not the particular persons who were to take the estate." In *True v. Nicholls*, 2 Duval (Ky.) 547, it is held: "A father conveyed land to his daughter 'and her bodily heirs.' As the deed contained nothing from which it could be inferred that the words were used in a sense different from their technical import, the grantee acquired the fee." In the opinion it is said that, upon examination of the deed, the court found that it contained nothing from which a reasonable inference could be drawn that the words were used in a sense different from their legal and technical signification, and that the grantee therein did not take a life estate, but acquired the fee in the land. In *Pritchard v. James*, 93 Ky. 306, the deed named "Julia James and her heirs" as the parties of the second part, and the granting clause recited that the party of the first part "hath granted, bargained and sold unto the said Julia A. James and her heirs" the land described. The habendum was: "To have and to hold unto the said Julia A. James and her heirs and assigns forever." The court held that Julia took a fee simple title, and that her children took no interest, the word "heirs" being used as a word of limitation, and not as synonymous with the word "children." In *Lanham v. Wilson*, 15 Ky. Law Rep. 109, the syllabus holds: "The grantor in a deed conveyed a tract of land

to his daughter and her '*bodily heirs.*' *Held,* That the intention of the grantor, as shown from the deed, was to use the words *bodily heirs* as words of limitation, and not of purchase." In *Chenault v. Chenault,* 22 Ky. Law Rep. 122, the deed recited that it was made and entered into by and between C. P. Chenault, party of the first part, and Mary H. Chenault, party of the second part; that the party of the first part "has bargained and sold, and by these presents does grant, bargain, sell and convey the following real estate, * * * in consideration of $1 in hand paid, and the further consideration of the love and affection first party has for second party, who is his wife, and the further consideration of the love and affection first party has for his infant child, James Hazelrigg Chenault, this property is sold and conveyed to second party in order that she and her infant child may enjoy and receive the benefit during second party's natural life, and that she may know that her infant child will receive said property at her death; to have and to hold the same unto the party of the second part, her heirs and assigns forever, with covenant of seizin and general warranty." The court say: "It will be noticed that nowhere in the deed does the grantor use words of conveyance or grant with respect to the infant child. The sale, conveyance and grant are to the wife alone. When he comes to give the reason he conveys the land to his wife, the grantor refers to his love and affection for his son, and recites, in effect, that he conveys the land to second party, the wife alone, because she may then know she and the son will receive the benefits of the grant during her natural life, and at her death the son may receive them. Nothing is, in terms or by necessary implication, given the son, but the mother is given the property for certain reasons which the grantor deems proper to state. The habendum clause likewise fails to make the son a grantee, the words, 'heirs and assigns forever,' being merely words of inheritance."

The trust in this case being for a married woman and designed for the protection of the estate from the husband

during coverture, the trust estate terminated when the estate was freed from any liability or control on the part of the husband by the divorce of the parties. 28 Am. & Eng. Ency. Law (2d ed.) 947. In *Roberts v. Moseley,* 51 Mo. 282, it is held: "When land is conveyed to a trustee for the sole use and benefit of a married woman, upon his death, the use is immediately executed in her, and if she be dead, then in her legal heirs." In that case George W. Moseley conveyed the premises in question by deed to one Armstrong in trust for the use and benefit of his wife, "Ann M. Moseley, and her heirs forever." In the opinion, on page 286, it is said: "Where a trustee is appointed to hold the estate of a married woman, to protect it from the husband, and the marriage relation comes to an end, his estate at once becomes executed in the person who is to take it, the wife, if living, or if she is dead, her heirs at law." In *Steacy v. Rice,* 27 Pa. St. 75, it is held: "A trust for a married woman is a *special trust,* and such are not within the statute of uses. But when she becomes discovert, the special trust for her separate use ceases and the legal estate vests fully in her." In *Bush's Appeal,* 33 Pa. St. 85, the syllabus reads: "A testator, by his will, gave a part of his estate to his daughter, a married woman; and in another part of his will, in order to secure it to her, he appointed a trustee for her share, directing him to invest the same at interest, to pay her the interest yearly during her life, and at her death to pay the principal to her heirs in equal parts: *Held,* That, on becoming discovert, the legacy vested in the daughter, discharged of the trust; and that she was entitled to have it paid over to her by the trustee." In the opinion, on page 87, the court say: "The creation of the trust was not to lessen her interest in it, but to 'secure' it to her. He was providing against her husband, in the usual form of a trust, and not providing a protection for his daughter's heirs against their mother. Now that the husband is dead, the trust is without purpose, and she may claim an account and payment of the legacy; and this

has very often been decided." The court then proceeds to say that, without regard to any express intention of the testator concerning the purpose of the trust, the legacy was Mrs. Snyder's absolutely, because it was given "to her and her heirs; to her for life, and then to her heirs. The trust, if valid, does not affect the real title. The equity form does not at all obscure the substantial title. A devise to one for life, with remainder to his heirs, or to the heirs of his body, in legal or equitable form, gives a fee simple or fee tail in land."

Cases similar to the above might be multiplied, but we deem further citation unnecessary. The purpose of the deed from Watts Parker to a trustee for the sole use and benefit of Lavinia was for the sole purpose of protecting her against her husband and his creditors. It was not intended to and did not vest any estate in her children. The words, "her heirs," were technical words of inheritance merely, and not words of purchase. When Lavinia became discovert by the divorce of herself and husband, the reason for the trust no longer existed, and the trust estate immediately terminated; and no other trustee having been appointed for her, thenceforward she was vested with the fee simple title to the land, with full power to convey the same, and her deed to Miller passed the full and complete title to the land in controversy. The title having been subsequently conveyed to defendant Patrick, he likewise took and holds a full title in fee simple. It might be said in closing that this holding does full justice in this case, as Miller and his grantees paid full consideration for the land, and had been in actual possession of the same for about 21 years at the time of the commencement of this suit.

The above holding renders a consideration of the other questions raised upon the trial and discussed in the briefs immaterial.

AFFIRMED.

BARNES, SEDGWICK and HAMER, JJ., not sitting.