## COHEN *v.* COHEN.

---

ALIENS; TREATIES; APPEAL AND ERROR.

1. Citizens of Russia who were next of kin of a decedent, on his death, April 6, 1912, are entitled to share in the proceeds of the sale of his real estate in the District of Columbia, by virtue of the Act of Congress of March 2, 1897 (29 Stat. at L. 618, chap. 363, Comp. Stat. 1916, sec. 3490), providing that prohibitions against the acquiring or holding of land by aliens "shall not apply to cases

in which the right to hold or dispose of lands in the United States is secured by existing treaties to citizens or subjects of foreign countries, which rights, so far as they may exist by force of any such treaty, shall continue to exist so long as such treaties are in force, and no longer," and article 10 of the treaty of this country with Russia of 1832 (8 Stat. at L. 450), providing that "where, on the death of any person holding real estate, within the territories of one of the high contracting parties, such real estate would, by the laws of the land, descend on a citizen or subject of the other party, who by reason of alienage may be incapable of holding it, he shall be allowed the time fixed by the laws of the country, and in case the laws of the country actually in force, may not have fixed any such time, he shall then be allowed a reasonable time to sell such real estate and to withdraw and export the proceeds without molestation"—notwithstanding the abrogation of such treaty on January 1, 1913.

2. A question not raised or considered in the court below cannot properly be made the subject of an assignment of error.

No. 3034.   Submitted October 9, 1917.   Decided December 3, 1917.

HEARING on an appeal by the plaintiffs and some of the defendants from an order of the Supreme Court of the District of Columbia, sitting as an equity court, denying certain prayers of a petition in a partition proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Charles W. Darr, Mr. Julius I. Peyser, Mr. Roger J. Whiteford* and *Mr. Sefton Darr* for the appellants.

No appearance was entered for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

This appeal is from an order to the effect that the appellees, Benjamin Cohen and Toge Lastkowsky, subjects of the then Russian Empire, were capable of taking by inheritance an interest in land in the District of Columbia.

Joseph Cohen, a naturalized citizen of the United States, died intestate April 6, 1912, in the city of New York, leaving as his

heirs at law and next of kin three brothers and two sisters, who are the respective parties to this proceeding. Appellees, a brother and sister, are residents of Russia and have entered no appearance. The decedent left several parcels of real estate in the District of Columbia, and it was the contention of appellants, Isaac Cohen and Celia Cohen, his wife, Jennie Alpert and Berel Alpert, her husband, Nathan Cohen, et al., in the court below that, by reason of alienage, appellees "are not entitled to any distributive share in the proceeds" of the sale thereof.

Chapter 7 of the Code, comprising secs. 396–398 [31 Stat. at L. 1252, chap. 854], respecting the right of aliens to hold real estate in the District of Columbia, is substantially the Act of March 3, 1887, "to restrict the ownership of real estate in the territories to American citizens," etc. 24 Stat. at L. 476, chap. 340, Comp. Stat. 1916, sec. 3498. Inasmuch, however, as by the Act of February 23, 1905, 33 Stat. at L. 733, chap. 733, Comp. Stat. 1916, sec. 3497, the Act of March 2, 1897, 29 Stat. at L. 618, chap. 363, Comp. Stat. 1916, sec. 3490, entitled "An Act to Better Define and Regulate the Rights of Aliens to Hold and Own Real Estate in the Territories," was made applicable to the District of Columbia, we must look to that act, rather than to the Code, to determine the question here at issue.

In the 1st section of the Act of 1897 it is provided that the prohibition against the acquiring or holding of land in any of the territories by an alien who has not declared his intention of becoming a citizen of the United States "shall not apply to cases in which the right to hold or dispose of lands in the United States is secured by existing treaties to citizens or subjects of foreign countries, which rights, so far as they may exist by force of any such treaty, shall continue to exist so long as such treaties are in force, and no longer." By section 3 it is provided that the act "shall not prevent aliens from acquiring lands or any interest therein by inheritance or in the ordinary course of justice in the collection of debts," etc.

On said April 6, 1912, there was in force the Treaty with Russia of 1832 (8 Stat. at L. 450), in article 10 of which it is provided: "And where, on the death of any person holding real estate, within the territories of one of the high contracting

parties, such real estate would, by the laws of the land, descend on a citizen or subject of the other party, who by reason of alienage may be incapable of holding it, he shall be allowed the time fixed by the laws of the country, and in case the laws of the country actually in force may not have fixed any such time, he shall then be allowed a reasonable time to sell such real estate and to withdraw and export the proceeds without molestation."

In *Geofroy* v. *Riggs,* 133 U. S. 258, 33 L. ed. 642, 10 Sup. Ct. Rep. 295, the question was whether a citizen of France could take land in the District of Columbia by descent from a citizen of the United States. As that case arose in 1888, before the enactment of the Code, the law of March 3, 1887 (24 Stat. at L. 476, chap. 340, Comp. Stat. 1916, sec. 3498), to which we have referred, was in force. It was held that the words, "except such as may be acquired by inheritance or in good faith in the ordinary course of justice in the collection of debts previously created," amounted to "a plain implication that property in the District of Columbia and in the territories may be acquired by aliens by inheritance under existing laws," and that "no property could be acquired by them in the District of Columbia by inheritance except by virtue of the law of Maryland as it existed when adopted by the United States during the existence of the convention of 1800 [Treaty with France, 8 Stat. at L. 182], or under the 7th article of the convention of 1853," 10 Stat. at L. 996. It therefore was held that a French citizen might take land in the District of Columbia under the terms of the convention then in force.

By section 1 of the Code [31 Stat. at L. 1189, chap. 854], the common law and British statutes in force in Maryland on the 27th day of February, 1801, not inconsistent with or replaced by provisions of the Code, were continued in force, while under section 1638 [31 Stat. at L. 1435, chap. 854], all acts of the general assembly of the State of Maryland, with certain exceptions not necessary here to be noticed, were repealed. It is plain, therefore, that to ascertain the rights of appellees, we must look to the Act of March 2, 1897, and the Treaty of 1832, and since the order appealed from involves merely the distribution of the fund to be derived from the sale of the real estate in

question, we do not deem it necessary to determine whether the same interpretation should be placed upon the Act of 1897 as was given the Act of 1887 in the *Riggs Case;* for whether the former act be held actually to confer upon aliens a right to acquire an interest in land by inheritance or be held merely to recognize rights that might exist under other legislation, that act certainly does not cut down any right that existed under the treaty. Therefore, as appellees were of the heirs at law of the decedent, they answered the conditions of that treaty and became vested with the interest therein defined in the real estate in question.

Our attention is directed to the fact that the foregoing treaty was abrogated January 1, 1913, without reservation, and it is suggested that the privileges therein conferred ceased and determined when the treaty ended. We cannot accept this interpretation of the Resolution of Abrogation. It was unnecessary for this government to declare that it would respect rights or privileges that already had accrued under the treaty, for an intent to affect such rights and privileges would not be presumed.

It is further suggested that a reasonable time within which to dispose of the interest of the appellees in the real estate in question already has elapsed. That question was not raised or considered in the court below, and so, of course, is not the subject of an assignment of error. We therefore do not feel called upon to consider it. It may be noted, however, that owing to the claim of Mrs. Annie Siegle to be the widow of said Joseph Cohen, which claim she asserted in a cross bill, the extent of the interest of appellees in the estate was undetermined. The record discloses that it was not until April of 1916 that a compromise agreement was reached between Mrs. Siegle and appellants, under which the real estate in question was to be sold and the proceeds distributed,—three eighths to Mrs. Siegle and five eighths "to the heirs at law and next of kin of the said Joseph Cohen, or their attorneys,"—and this agreement the court below has been asked to ratify. It is not strange, therefore, that the point here suggested was not raised below.

The decree is affirmed, with costs.                    *Affirmed.*