[No. 23762. Department Two. December 13, 1932.]

*In the Matter of the Adoption of* DONALD WAYNE WALKER, *a Minor.*

SIDNEY E. McDONALD *et al., Appellants,* v. CLARENCE H. WALKER, *Respondent.*[1]

[1]Reported in 17 P. (2d) 15.

*Beardslee & Bell,* for appellants.
*Leo W. Stewart,* for respondent.

STEINERT, J.—This is an appeal from an order vacating a decree of adoption. The contest is between the grandparents, also adoptive parents, of a minor child, and Clarence H. Walker, its father. We designate the grandparents as appellants and the father as respondent.

On October 10, 1930, Beatrice Walker, daughter of the appellants, began an action for divorce against respondent, her husband. The respondent defaulted in that action. On November 14, 1930, an interlocutory decree of divorce was entered. By that decree the custody of Donald Wayne Walker, the minor, now nine years of age, was awarded to Beatrice Walker, the mother, subject to the rights of the respondent to visit the child at all reasonable times. The decree provided that the child should not be taken from the jurisdiction of the court without the consent of the respondent or else without an order of court. There was a further provision that the respondent should contribute the sum of twenty-five dollars per month for the support and maintenance of the child. The decree did not provide in terms, however, that the right of visita-

tion was conditioned upon the payment of the support and maintenance money. The interlocutory decree was made final on May 27, 1931.

For some time prior to the entry of the interlocutory decree of divorce, Mrs. Walker had been ill and unable to support herself and child, and they, being dependent upon appellants, had made their home with the latter until Mrs. Walker's death, about July 21, 1931. Prior to her death, and while in a hospital, Mrs. Walker wrote a letter to the respondent reading as follows:

"Dear Clarence:—Before undergoing this operation, there is one last favor I am asking of you. That is if anything should ever happen to me, I would want my mother to raise *our* boy. Clarence, I know your own mother would feel as I do if she were only still living. I know this writing will not be necessary because this operation is going to be a complete success. Just the same there will be a great consolation to know our little man will always have a good home. Love, Beatrice."

There is a serious dispute in the evidence as to how much the respondent actually contributed to the support of the child after the entry of the interlocutory decree. The appellants contend that the amount was only ten dollars; respondent, contending that the amount was considerably more, testified that he had contributed varying sums at different times, although admittedly the total amount of the payments was not very great and did not approximate the amount called for in the interlocutory decree. As an excuse for his failure to make proper contribution, respondent testified that, for a considerable portion of the time, he was unable to do so because of lack of work and funds; that, in June, 1930, having gotten work, he went to the home of the appellants to make a payment, but could not then, or subsequently, find his wife.

It appears that Mrs. Walker had left Seattle for California about February 1, 1931, and did not return until the latter part of May of that year. Shortly after Mrs. Walker left Seattle, respondent also departed from that city, going to the state of Oregon, but at the time gave the appellants an address in the city of Vancouver, B. C., as the place where he could be reached. This was the home of respondent's sister, so known to be by the appellants. It further appears that, in May, 1931, respondent forwarded money from the above address by letter which appellants admitted receiving; during the same month, respondent received a letter at the same address from his little son.

In July, respondent learned of the death of his wife, and immediately went to Seattle from Portland, but could not locate the appellants or his son. He later learned that his wife's death had occurred at a hospital in Rochester, Minnesota, and that the appellants had temporarily taken the child to Saginaw, Michigan. Respondent then wrote to appellants, requesting that the child be brought back to Seattle in time for school. In August, respondent again went to Seattle and attempted to communicate with appellants, but found no one at their home.

The appellants returned from Saginaw about September 7th or 8th, and on September 9th instituted and completed proceedings in the superior court resulting in the adoption of the child as their own. This was without notice to, or consent of, the respondent, who did not become aware of the adoption until he arrived in Seattle two days later. The respondent thereafter filed a petition to vacate the decree of adoption, and after a hearing, a vacation order was entered. The appellants assign two reasons for not giving respondent notice of the adoption proceedings: (1) that his whereabouts were unknown, and (2) that he was not

entitled to notice, having abandoned the child. This appeal is from the order vacating the decree of adoption.

It is well, at this point, to quote the adoption statute bearing upon the question with which we are here concerned:

"Any inhabitant of this state, not married, or any husband or wife jointly, may petition the superior court of the county of their residence for leave to adopt, and change the name if desired, of any person, but a written consent must be given to such adoption by the person, if of the age of fourteen years, and if under the age of twenty-one years by each of his or her living parents, or in case the child be illegitimate, by his or her living mother; *Provided,* That the consent of the parent shall not be required in the following cases, to-wit:

"(1) From a father, or mother, deprived of civil rights.

"(2) From a father, or mother, who has been unconditionally deprived of the custody and control of such child by the judgment or decree of a court of competent jurisdiction, in an action, suit or proceeding, in which such parent has been given notice and a right to be heard.

"(3) From a father, or mother, who has been adjudged and decreed to be feeble minded, or at least one year prior thereto was adjudged insane and has not since been found sane by any competent authority authorized by law.

"(4) From a father, or mother, who has been found by a court of competent jurisdiction to have deserted or abandoned such child without provision for his or her identification.

"If in either of the cases above mentioned the child has a legal guardian, the consent of such guardian shall be required and if the child has no legal guardian, then the court shall appoint a discreet and suitable person to act in the proceedings for adoption as the next friend of such child.

"Either spouse may adopt the child of the other." Rem. 1927 Sup., § 1696.

 It is true that Mr. and Mrs. Walker, natural parents of the child, were living separate and apart at the time of their divorce, and that the mother was awarded the care, custody and control of the child. But it is also true that, by the interlocutory decree of divorce, the father was given the right of visitation. A very similar situation was presented in the case entitled *In re Lease,* 99 Wash. 413, 169 Pac. 816, and this court there said, at p. 419:

"Now, recurring to the italicized portion of our statute above quoted, it might seem, when read superficially apart from its evident spirit, that, when the care and custody of a child is given to one parent by a divorce decree, the consent of such parent alone would be sufficient to authorize the adoption of such child by another. But when we are reminded of the conclusive and far-reaching effect of an adoption decree and that it is not a mere custody decree, like in a guardianship or other similar proceeding, every consideration of fairness to the natural parents dictates that the provisions of our statute prescribing the conditions under which consent may be dispensed with should receive a strict construction. We are of the opinion that, to enable one parent having the custody and control of a child to effectually consent to its adoption by another, such custody and control must be of such an absolute and unconditional nature that the other parent's right in the child is extinguished, or the other parent's conduct is such as to estop him or her from asserting such right. Let us suppose that, pending a divorce action, when, of course, the husband and wife are supposed to be living separate and apart, one or the other be given the temporary custody and control of their minor child. To give the statute the literal meaning contended for by counsel for appellant would enable the parent so having the custody and control of the child to effectually consent to its adoption by another. We cannot believe that such is the legislative intent."

The statute referred to in the *Lease* case is Rem. & Bal. Code, § 1696, amended in 1927 by Rem. 1927 Sup., § 1696, which we have quoted above. The language of that decision, however, is in no way rendered less applicable by the amending statute.

The *Lease* case was extensively reviewed and fully approved in the later case of *In re Force,* 113 Wash. 151, 193 Pac. 698.

The appellants contend that the force of these cases is restricted and limited by the provision of the statute which makes consent of the parent unnecessary when such parent has abandoned the child. It is to be noticed, however, that the abandonment referred to in the statute, as dispensing with the necessity of consent, is not a general or an unconditional abandonment, but an abandonment *without provision for identification.* Whatever this modifying language may mean, it does not fit the facts in this case as found by the lower court. The line of connection between the respondent and his minor child was never entirely broken, but its continuance was maintained by the father from the time of the divorce up through the adoption proceedings. In *State ex rel. LeBrook v. Wheeler,* 43 Wash. 183, 86 Pac. 394, we said:

"To constitute such an abandonment by a parent as will deprive him of the right to prevent the adoption of his child, there must be some conduct on his part which evinces a settled purpose to forego all parental duties. But merely permitting the child to remain for a time undisturbed in the care of others is not such an abandonment."

and in *Penney v. Penney,* 151 Wash. 328, 275 Pac. 710, we emphasized the thought in the following language:

"Paternal or maternal rights will not be held to have been abandoned except upon a plain showing to that effect, and that the acts are without justifiable excuse. Here, we think the father's financial reverses

and his prompt resumption of efforts as soon as financially able to so do, fully excuse the apparent delay.''

The court below, in vacating the decree of adoption, specifically held that the father had not abandoned the child. However solicitous and anxious the appellants may be for the welfare of the child, and we fully recognize and approve their concern in that respect, nevertheless we must hold, under the evidence in this case, that the respondent's rights are paramount, and that they have not been lost through complete or intentional abandonment of the child.

We are also of the opinion that there was not legal consent to the adoption given by the mother. Appellants rely upon the letter quoted above and written by Mrs. Walker just prior to her death. That letter, however, does not refer to adoption proceedings, but merely expresses the wish that the grandmother be permitted to raise the child, a very natural thought on the part of the mother, and one which might have been carried out irrespective of any adoption. The letter shows on its face that Mrs. Walker was not attempting to express her own consent to adoption but was merely making a request of the respondent regarding the raising of the child, and that, too, contingent upon her own death. This, we hold, did not constitute a legal consent on her part.

A further question of some interest, affecting a matter of practice, was originally suggested in the briefs. Respondent's attorneys moved for a dismissal of appellants' appeal on the ground that the order vacating the decree of adoption was not appealable under Rem. Comp. Stat., § 1716, which is the appeal statute. Since the court in its decree made no disposition of the child, but merely vacated the decree, leaving the proceedings for adoption still open, we think there was at least argumentative merit in respondent's

motion. If an order vacating a judgment may be followed by further proceedings in the case and the entry of a final judgment therein, such order may be reviewed on appeal from the final judgment, and is not itself appealable. *Tatum v. Geist,* 40 Wash. 575, 578, 82 Pac. 902.

However, at the oral argument, respondent waived his motion, and the case is now before us as though the motion had never been made. Furthermore, the court found that the respondent had not abandoned the child, and this fact, together with the further fact that the custody and control of the child was not awarded unconditionally to the mother in the divorce proceedings, would seem to make the matter conclusive against further adoption proceedings without the consent of the father. And, finally, both parties tried the case below, and have argued it before us, apparently upon the theory that our decision is to be conclusive of the entire matter. To send the case back now would involve the reproduction of evidence which has already been fully considered, and would necessarily entail further time and expense, attendant with continued anxiety and uncertainty which would benefit no one. Considering the order of vacation in the light of the evidence on which it was based, and from the angle of its ultimate effect, it may be said to possess that finality necessary to make it appealable. We have, therefore, considered the case as a whole, and disposed of it on its merits.

The order vacating the decree of adoption is affirmed.

TOLMAN, C. J., MAIN, and BEALS, JJ., concur.