**In re ADOPTION OF A MINOR.**

**No. 11855.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 7, 1953.

Decided May 6, 1954.

Petition for Rehearing In Banc
Denied Sept. 2, 1954.

Wilbur K. Miller, Circuit Judge, dissented.

Mr. John Geyer Tausig, Washington, D. C., for appellant.

Mr. Leon Pretzfelder, Washington, D. C., with whom Mr. John F. Cooney, Washington, D. C., was on the brief, for appellees.

Before WILBUR K. MILLER, PRETTYMAN and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from a judgment of the District Court, allowing the adoption of a child by its natural mother and her present husband. The child's natural father appeals.

Appellant and respondent (the child's mother) were married in 1947.[1] They had a son—the subject of this litigation —in 1948. In 1949 they separated, and on February 17, 1950, entered into a separation agreement. This agreement provided that the mother should have the "entire control and custody of the child," but that the child "may visit and see [appellant] * * * as they may desire and as the parties hereto may agree." A property division was also contained in the agreement. And appellant agreed to pay $75.00 a month for the maintenance of the child during his minority. To secure this obligation the agreement provided for the creation of a trust with a corpus of $16,000. The trust, created simultaneously with the separation agreement, provided for monthly payments until the child's twenty-first birthday; at that time the corpus is to go over to the child. Other provisions of the trust will be described on later pages.

After separating from respondent, appellant established a Florida residence and in May of 1950 commenced an action for divorce in that state. Respondent was represented by counsel. An absolute divorce was granted to appellant on May 29, 1950. The final decree of the Florida court incorporated by reference the "property settlement agreement between the parties executed the 17th day of February, 1950 * * *."

Respondent remarried in 1951. On May 6, 1952, she and her present husband petitioned the District Court for permission to adopt. Appellant answered requesting that the District Court allow the adoption "only if this Court determines that said adoption will be in the best interests of * * * [the child] and only if this Court determines that the balance of the above-mentioned trust corpus should be returned" to appellant.

The District Court in an order of summary judgment and a final judgment of adoption allowed the adoption, finding it to be in the best interests of the child. It did not, however, order the return of the trust corpus.

The District of Columbia adoption statute provides generally that no decree of adoption shall be made without the consent of the natural parent.[2] There are, however, several statutory exceptions. The District Court in allowing adoption relied on the exception reading: "The consent of a natural parent, or parents * * * may be dispensed with * * * (2) where they have been permanently deprived of custody of the adoptee by court order * * *."

---

1. The mother will be referred to herein as the respondent although her present husband was also a petitioner in the District Court and is an appellee here.

2. D.C.Code, Title 16, § 202, 1951.

846

D.C.Code, Title 16; § 202, 1951. It held that the Florida decree incorporated the custody provisions of the separation agreement and, consequently, "permanently" deprived appellant of custody. Appellant challenges this holding on three grounds: first, that the Florida court had no jurisdiction to award custody of the child because, says his counsel, the child was not then within the State of Florida; second, that the court did not purport to award custody of the child since it incorporated in its decree only the "property settlement" of the parties; and, third, that since appellant retained a right of visitation under the terms of the separation agreement he has not been "permanently" deprived of custody within the meaning of the District adoption statute.

We cannot accept these contentions. No question as to the jurisdiction of the Florida court was raised in the District Court. Under the circumstances, sound judicial practice leads us to decline to consider the point.[3] Litigation must have an end: parties must make full use of their day in court, and not seek to overturn an adverse judgment by raising new issues on appeal. Of course, in unusual circumstances, to prevent a clear miscarriage of justice, an exception will be made. See Mulligan

v. Andrews, 1954, 93 U.S.App.D.C. 375, 211 F.2d 28; Schaff v. R. W. Claxton, Inc., 1944, 79 U.S.App.D.C. 207, 144 F. 2d 532. But no such case is before us now. This is, in fact, a strong case for assertion of the established rule. The record does not support appellant's contention: it contains no proof that the child was not in Florida when the Florida decree was rendered. Certainly we cannot presume that a jurisdictional prerequisite was absent.[4] On the contrary, "A judgment presumes jurisdiction over the subject matter and over the persons." Cook v. Cook, 1951, 342 U.S. 126, at page 128, 72 S.Ct. 157, 159, 96 L.Ed. 146. Under the Full Faith and Credit Clause, "The burden of undermining the verity" of the decree of a sister jurisdiction "rests heavily upon the assailant." Williams v. North Carolina, 1945, 325 U.S. 226, at pages 233–234, 65 S.Ct. 1092, at page 1097, 89 L.Ed. 1577. Here the appellant has not begun to meet the burden. Consideration of appellant's argument would, therefore, require us to remand the case for the taking of further evidence and the making of new findings. This is a serious interference with orderly administration; much more so than merely deciding a question of law not raised in the trial court. True, a court may at any time, even on its own accord,

3. Keyes v. Madsen, 1949, 86 U.S.App.D.C. 24, 179 F.2d 40, certiorari denied, 1950, 339 U.S. 928, 70 S.Ct. 628, 94 L.Ed. 1349; Brown v. Rudberg, 1948, 84 U.S.App.D.C. 221, 171 F.2d 831; Cohen v. Cohen, 1917, 47 App.D.C. 129; United States ex rel. Laws v. Davenport, 1910, 34 App. D.C. 502.

4. Moreover, the Florida court may have had jurisdiction even if the child was not physically present in Florida. Under Florida law, where the parents are living apart but not divorced, a child's domicile appears to be that of its father— even if it is living with its mother; and if the child is domiciled in Florida the courts of that state may well have jurisdiction to make an award of custody. Minick v. Minick, 1933, 111 Fla. 469, 149 So. 483; cf. People of State of New York ex rel. Halvey v. Halvey, 1947, 330 U.S. 610, 615, 67 S.Ct. 903, 91 L. Ed. 1133. But see State ex rel. Rasco

v. Rasco, 1939, 139 Fla. 349, 190 So. 510. In the District of Columbia the rule is otherwise. Here, where parents are separated but not divorced the child's domicile is that of the parent with which it resides. Oxley v. Oxley, 1946, 81 U.S. App.D.C. 346, 159 F.2d 10. But it would seem (though we need not decide) that the jurisdiction of the Florida court, so long as constitutional standards are complied with, must be determined by Florida law. See Goodloe v. Hawk, 1940, 72 App.D.C. 287, 289, 113 F.2d 753, 755. We think constitutional standards were complied with in this case. May v. Anderson, 1953, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221, is not to the contrary. The Court did not hold that the state of the child's domicile would have no jurisdiction to make an award of custody. See concurring opinion of Mr. Justice Frankfurter, 345 U.S. at page 535, 73 S.Ct. at page 844.

raise questions pertaining to its own jurisdiction. But a lack of jurisdiction in the Florida court in this case could in no way affect the jurisdiction of the courts of the District of Columbia.[5]

Appellant was the plaintiff in the Florida action. He invoked the jurisdiction of the court, received a favorable judgment, and presumably was instrumental in the formulation of the decree. In this situation he may well be estopped from attacking the jurisdiction of the Florida court in a collateral proceeding.[6] His present attack on the Florida decree, moreover, is not to regain custody of the child, or to set aside the substance of the decree in any other way. Apparently he is quite satisfied to have the child remain with its mother. Appellant's objective is to cast doubt on the Florida decree for the limited purpose of avoiding the application of the District of Columbia adoption statute. We need not decide whether he is technically estopped from making such a challenge. It is enough to say that under the circumstances we are not inclined to grant him the affirmative privilege of raising his contention here when he did not do so in the trial court.

We also think that the District Court correctly held that the Florida court in incorporating by reference the "property settlement agreement" meant to include and did include the custody provisions. Provision for the trust, for custody and for a division of property all appeared in the same document. This was labeled simply "Agreement." Surely if the Florida court had desired to incorporate only a part of the document it would have said so. We think that the Florida court meant by the property settlement agreement the document as a whole.

Appellant's other objection—that a natural parent is not "permanently" deprived of custody so long as visitation rights are retained—is new to the District of Columbia.[7] Several cases, taking varying positions, have been decided on the point in other jurisdictions. They interpret, of course, statutes of varying text. A Washington statute, for example, dispensed with consent where the parent was "unconditionally" deprived of custody.[8] And a Washington case interpreting that statute held that parental consent, so long as visitation rights are retained, is necessary.[9] A Kansas statute read: "If the parents * * * have been divorced, 'the consent of the parent to whom custody * * * shall have been awarded shall be necessary * * * but the consent of the other parent * * * shall not be necessary.'" And a Kansas case decided under that statute held that the consent of a parent having visitation rights may be dispensed with.[10]

Our statute, of course, speaks of a decree "permanently" depriving a parent of custody. A right of visitation

5. See Restatement, Judgments § 13 (1942).

6. See Curry v. Curry, 1935, 65 App.D.C. 47, 49, 79 F.2d 172, 174, where we said: "* * * it can never lie with a litigant either by passive consent, or by affirmative action, to lead a court to find a fact justified and fit to be carried into judgment, and then to contend in another court that the same fact at the same time and within his own knowledge, was otherwise and competent to support a contrary judgment."

7. See In re Adoption of a Minor, 1952, 90 U.S.App.D.C. 107, 194 F.2d 325.

8. Wash.Rev.Stat.Ann. § 1696 (1932) (since amended).

9. In re Walker, 1932, 170 Wash. 454, 17 P.2d 15. See In re Force, 1920, 113 Wash. 151, 193 P. 698, and In re Lease, 1918, 99 Wash. 413, 169 P. 816 (decided under an earlier and less explicit statute). See also In re Jackson, 1934, 55 Nev. 174, 28 P.2d 125, 91 A.L.R. 1381; Onsrud v. Lehman, 1952, 56 N.M. 289, 243 P.2d 600; Stone v. Dickerson, Tex. Civ.App.1940, 138 S.W.2d 200; Pearce v. Harris, Tex.Civ.App.1939, 134 S.W. 2d 859.

10. In re Hardesty's Adoption, 1939, 150 Kan. 271, 92 P.2d 49, interpreting Kan. Gen.Stat. 38–106 (1935), since repealed by Kan.Laws 1939, c. 180, § 280. See also In re Kelly's Adoption, 1941, 47 Cal.App. 2d 577, 118 P.2d 479; In re Chinn's Adoption, 1947, 238 Iowa 4, 25 N.W.2d 735; In re Stromberg's Adoption, Ohio App.1944, 58 N.E.2d 88.

may perhaps be so definite in its terms and so substantial in its scope and effect as to render unreasonable a holding that the parent enjoying that right has been permanently deprived of custody. But this is a question we need not decide, for no such situation is before us in this case. Here the mother was given "entire control and custody." The contract imposed no real limitation on that sweeping grant, in favor of appellant. It was the child who was to be entitled to "visit and see [appellant] * * * as they may desire and as the parties hereto may agree." No doubt this last provision was not altogether illusory: appellant would be at least entitled to good faith consideration of his requests for visitation. But in the cases relied upon by appellant the visitation provisions were far more definite. They granted the parent the right to visit at stated times or at all reasonable times.[11] We note also the allegation of the complaint that at no time did appellant make "any effort to arrange to see" the child. Appellant did not deny this, though he said he has "reasons" for his attitude. Whatever right or privilege of visitation the agreement granted thus remained unclaimed, unexercised, and unclarified by conduct. Under the circumstances, we think that the District Court could properly find that the decree of the Florida court "permanently deprived" appellant of custody.

As to appellant's claim for revocation of the trust, we think the District Court's decision was correct: The trust is by its terms irrevocable. It is silent as to the contingency of the mother's remarriage, or the child's adoption, though it provides for other contingencies. It provides that if the child dies before reaching maturity the corpus is to go to appellant; however, if appellant, at that time, is also dead, the corpus goes to respondent. Appellant maintains that upon the adoption the purpose of the trust was fulfilled and its corpus, therefore, should be returned to him. Appellant bases this argument on two propositions: first, that a duty to support a child under a divorce decree is ended upon another's adoption of the child; second, that a trust should be terminated and its corpus paid to the grantor when its purpose is fulfilled. The first of these propositions may well be so.[12] As to the second, we note that the cases cited by appellant involve facts materially different from those of the instant case. In each instance the reason for withholding full ownership of the corpus from the *cestui que trust* was found to have disappeared and the corpus was paid over to the *cestui*—not the grantor. Most of the cases involved trusts set up for the benefit of married women with provision for corpus over to the *cestui* upon the death of the husband. Their purpose was clearly to keep the corpus away from the husband. Upon divorce the trust was terminated and the corpus paid over to the wife.[13]

But even accepting, *arguendo*, appellant's propositions, we do not think that this trust should be terminated. Adoption in this case does not fulfill its purpose. The trust agreement, as we have noted, does more than secure the support payments: it provides that the corpus shall be paid over to the child on his

11. See cases cited supra, note 9. See also Smith v. Smith, 1947, 67 Idaho 349, 180 P.2d 853; In re Metzger, 1921, 114 Misc. 313, 186 N.Y.S. 269.

12. D.C.Code, Title 16, § 205, 1951, provides that upon adoption "All rights *and duties* including those of inheritance and succession between adoptee, his or her natural parents, their issue, collateral relatives, and so forth, shall be cut off." (Emphasis supplied.) See Gross v. Gross, 1920, 110 Misc. 278, 179 N.Y.S. 900.

13. See Cary v. Slead, 1906, 220 Ill. 508, 77 N.E. 234; In re Cornils' Estate, 1914, 167 Iowa 196, 149 N.W. 65, L.R.A.1915E, 762; Simmons v. Northwestern Trust Co., 1917, 136 Minn. 357, 162 N.W. 450, L.R.A.1917F, 736; McNeer v. Patrick, 1913, 93 Neb. 746, 142 N.W. 283; In re Stafford's Estate, 1917, 258 Pa. 595, 102 A. 222; In re Lee's Estate, 1903, 207 Pa. 218, 56 A. 425; Koenig's Appeal, 1868, 57 Pa. 352.

twenty-first birthday. The respondent, moreover, has a contingent interest in the corpus. Consequently, even assuming that the purpose of the support provisions would end with adoption, the corpus over provisions necessitate the trust's continuance.[14]

A further aspect of the case seems to us to require comment. Appellant's answer requested that the District Court allow the adoption if it found that course to be in the best interests of the child and if it ordered the corpus of the trust returned to him. The District Court has found the adoption to be in the best interests of the child. A strong argument can be made that appellant should be held to have given actual consent to the adoption, within the meaning of the statute; that his second condition, in other words, was one he was not entitled to attach. It was a condition not intended to protect the child's welfare, nor even a parent's interest in sharing the child's life and affection, but on the contrary was designed to obtain for appellant funds which he had irrevocably granted to the child. In view of our disposition of the case, we do not reach this point. But we certainly do not wish to be understood as having negated it by silence.

For these reasons, the judgment of the District Court will be

Affirmed.

WILBUR K. MILLER, Circuit Judge (dissenting.)

The court affirms a decree which permitted a stepfather to adopt a boy without the natural father's consent. Before stating the reasons which impel me to dissent, I find it necessary to summarize the facts in order to supply some details not contained in the majority opinion.

The natural parents of the child who is the unfortunate subject of this litigation separated June 25, 1949, while living in the District of Columbia. They entered into a written contract February 17, 1950, concerning the custody, maintenance and education of their small son. By its terms the father agreed to make satisfactory provision for the care and education of the child. Apparently he has done so. As to custody, it was agreed as follows:

"* * * The party of the first part [the mother] has and is to continue to have the entire control and custody of the child * * * but the said child may visit and see the party of the second part [the father] as they may desire and as the parties hereto may agree."

On May 29, 1950, a state court in Florida granted an absolute divorce at the suit of the husband. Its judgment recited the presence of the husband, his witnesses and counsel, and counsel for the wife. It also contained, in addition to the decree of divorce, the following: "The property settlement agreement between the parties executed the 17th day of February, 1950, is hereby recognized, approved and by reference made a part of this Final Decree."

14. Appellant urges that the District Court erred in not granting his motion to join the trustee of the trust as a party defendant. He cites Kroese v. General Steel Castings Corp., D.C.E.D.Pa.1949, 9 F.R.D. 273, for the proposition that the trustee was an indispensable party because the relief asked was the setting aside of the trust. True it is that the court could hardly have set aside the trust in any effective way without joining the trustee. But here it declined to grant appellant any relief. The only real purpose to be served by joining the trustee would be to bind the latter by the court's decision. Cf. Fed.R.Civ.P. 19(c), 28 U.S.C.A. That was hardly requisite, since the trustee would as a practical matter be constrained to defend the trust, or at least to remain neutral. It was at most a conditionally necessary party. We think that under the circumstances the court did not abuse its discretion in the matter, Gauss v. Kirk, 1952, 91 U.S. App.D.C. 80, at page 82, 198 F.2d 83, at page 85, and was entitled to adjudicate the rights of the parties before it, as between themselves. Ward v. Deavers, 1953, 92 U.S.App.D.C. 167, 203 F.2d 72, at page 75.

The child's mother remarried in 1951. Her second husband, the child's stepfather, filed May 6, 1952, in the United States District Court for the District of Columbia a petition for adoption in which the mother joined merely to indicate her consent.[1] She stated therein that the child had lived with her continuously since February 17, 1950, the date of the contract by which his natural father surrendered to her "entire control and custody," subject to such visitation as she might permit.

The natural father did not consent to the proposed adoption.[2] The District Court nevertheless granted the petition and decreed adoption, holding "that the consent of the natural father to the adoption may be dispensed with because he has been permanently deprived of custody of the adoptee by Court order * * *."[3] On the natural father's appeal from the decree, my brothers have affirmed. In my opinion, the natural father had not been permanently deprived of his son's custody by a valid court order, and therefore the District Court erred in decreeing adoption without his consent.

The natural father vigorously argues to us that the Florida court lacked jurisdiction to award custody because, when it assumed to do so, the child was neither domiciled nor present in the state. My brothers of the majority decline to consider the point for the reason the question was not raised in the District Court. They also reject the point as immaterial, saying, "[A] lack of jurisdiction in the Florida court in this case could in no way affect the jurisdiction of the courts of the District of Columbia." The majority also suggest the natural father "may well be estopped" to attack in this collateral proceeding the jurisdiction of the Florida court because he himself had invoked it.

The father's attack in this court on the Florida court's jurisdiction is an attack on the District Court's jurisdiction, for the latter's authority to decree adoption without the father's consent depended directly and entirely upon the validity of the Florida judgment which deprived him of custody. To say that the father, by failing to raise the question in the District Court, waived the right to challenge the Florida court's jurisdiction, is therefore tantamount to saying he waived the right to challenge here the District Court's jurisdiction. The lack of jurisdiction of a federal court touching

---

1. Section 16–201, D.C.Code 1951, contains the following sentence:
   " * * * No petition [for adoption] shall be considered by the court unless petitioner's spouse joins in the petition or consents to the adoption."
   Manifestly, that is the reason the mother joined in the stepfather's petition. There is, of course, no occasion for a mother to adopt her own child, who is naturally her heir at law and is bound to her in all respects by ties far stronger than a court can create by a decree of adoption. The stepfather is, therefore, the only real petitioner for adoption here.

2. I am not impressed with the court's suggestion that the natural father might be said to have consented to the adoption. He did offer to consent on condition that the trust fund he had established for his son's maintenance be restored to him. The majority opinion says this may have been a condition he had no right to impose and possibly his

conditional consent should be regarded as absolute. The father could logically require, I think, that the stepfather accept responsibility for the child's maintenance along with adoption. Significantly, the mother and stepfather said they would withdraw the petition for adoption if that condition were imposed. The District Court did not regard the father's offer as consent.

3. This was purportedly done under § 16–202, D.C.Code, 1951, which in pertinent part is as follows:
   "If adoptee is under twenty-one years of age, no decree of adoption shall be made unless the court shall find that the following persons have consented to the adoption: * * * the natural parents * * *.
   *   *   *   *   *
   "The consent of a natural parent, or parents * * * may be dispensed with * * * where they have been permanently deprived of custody of the adoptee by court order * * *."

the subject matter of litigation cannot be waived by the parties and may be raised for the first time on appeal, as the father did here, or may be raised for the first time by the appellate court on its own motion. Treinies v. Sunshine Mining Co., 1939, 308 U.S. 66, 70, 60 S. Ct. 44, 84 L.Ed. 85; United States v. Corrick, 1936, 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263; Fleming v. Richter, 2 Cir., 1947, 159 F.2d 792; Hock v. 250 Northern Ave. Corp., 2 Cir., 1944, 142 F.2d 435; Colorado Life Co. v. Steele, 8 Cir., 1938, 95 F.2d 535; Southern Pac. Co. v. McAdoo, 9 Cir., 1936, 82 F.2d 121.

Nor is the father estopped to attack the jurisdiction of the Florida court because he was the party who invoked it. In Grubb v. Public Utilities Comm., 1930, 281 U.S. 470, 50 S.Ct. 374, 74 L. Ed. 972, the appellant questioned the state court's jurisdiction over the subject matter, although at the outset he had treated that jurisdiction as subsisting and had invoked its exercise. The Supreme Court said, 281 U.S. at page 475, 50 S.Ct. at page 377:

"* * * Of course, he is entitled to raise this question notwithstanding his prior inconsistent attitude, for jurisdiction of the subject-matter must arise by law and not by mere consent. * * *"

In sum, these propositions seem clear: (a) that, although he did not do so in the District Court, the father may raise in this court the question of Florida's jurisdiction; (b) that the question is material because it goes directly to the jurisdiction of the District Court to decree adoption without the father's consent; and (c) that the father is not estopped to raise the issue.

The next question, not discussed in the majority opinion, is whether the Full Faith and Credit Clause of the Constitution, Article IV, § 1, required the District Court to accept the Florida court's judgment at its apparent face value, without questioning the jurisdiction of that court over the subject matter.[4]

A court which is asked to give full faith and credit to a judgment from another state is not constitutionally required to assume that the court which rendered the judgment had jurisdiction over the subject matter. On the contrary, it may examine for itself the question of the other court's jurisdiction, and must do so when that jurisdiction is brought in question. This principle was restated by the Supreme Court in People of State of New York ex rel. Halvey v. Halvey, 1947, 330 U.S. 610, 614, 67 S.Ct. 903, 906, 91 L.Ed. 1133, as follows: "If the court of the State which rendered the judgment had no jurisdiction over the person or the subject matter, the jurisdictional infirmity is not saved by the Full Faith and Credit Clause." The leading case of Thompson v. Whitman, 1873, 18 Wall. 457, 85 U.S. 457, 21 L.Ed. 897, was cited in support. Accordingly, the Full Faith and Credit Clause did not prevent the District Court, and does not prevent us, from considering and determining the question raised by the natural father concerning the Florida court's jurisdiction to award custody. I think my brothers err in declining even to consider it.

Examination of the question will reveal that no basis of jurisdiction in Florida was shown. In the Halvey case the Supreme Court summarized the Florida rulings concerning the bases of its courts' jurisdiction to award custody. It said, 330 U.S. at page 615, 67 S.Ct. at page 906, note 2:

"* * * The power of the Florida courts to award custody of a child is dependent either on the child being legally domiciled in Florida or physically present there. Dorman v. Friendly [146 Fla. 732, 738, 1 So.2d 734, 736]; State ex rel. Clark v. Clark, 148 Fla. 452, 4 So.2d 517."

From facts in the record before the District Court, it is clear this child was not legally domiciled in Florida. Both parents were domiciliaries of the Dis-

4. The child himself was the "subject matter," a living "res."

trict of Columbia before the husband went to Florida and stayed long enough to get a divorce. Whether he established a legal domicile in that state is immaterial, because the wife stayed here and so retained her domicile in the District,[5] and the child took her domicile because he actually lived here with her continuously after the separation.[6] It follows that the Florida court did not have jurisdiction to award custody on the basis of the child being legally domiciled in that state.

With domicile in Florida eliminated as a basis of jurisdiction in the divorce court to award custody, the question is whether the record before the District Court showed the child was physically in Florida at a time when his presence there would enable the court in that state to adjudicate concerning his custody. The record contains no showing whatever that the child was in Florida at any stage of the divorce proceeding, and the father insists in argument that he was not. The mother and stepfather do not say he was there.[7] They rely upon the fact that the record does not show the child was *not* in Florida.

In the absence of a positive showing that the Florida court had jurisdiction, my view is the District Court could not give full faith and credit to its judgment concerning custody by relying upon it as a reason for permitting a stranger to adopt the child without the father's consent. I do not believe the District Court had the right to assume that, some years before, a Florida court had somehow acquired jurisdiction over a child who had since birth been domiciled in the District of Columbia. In the circumstances, the court here on its own motion should have required proof as to how the Florida court obtained jurisdiction before crediting its custody order. Mr. Justice Jackson concurred in the result in the Halvey case, 330 U.S. at page 616, 67 S.Ct. at page 907, "on the ground that *the record before us* does not show jurisdiction in the Florida court." (Italics supplied.)

My conclusion is the child was not legally domiciled in Florida, nor physically present there; that, as a result, the Florida court had no power to award custody, and its judgment purporting to do so was and is invalid. Consequently, the District Court erred in decreeing adoption without the father's consent, on the ground he had been judicially deprived of custody. No other statutory ground for dispensing with paternal consent was suggested, and no other was found by the District Court.

Accordingly its judgment should be reversed and the case should be remanded with instructions to deny the petition for adoption; or, at the very least, with instructions to hear proof and determine therefrom whether the child was in Florida at a time or times which gave the court in that state jurisdiction to enter a custody order. Perhaps the petitioners should also be permitted to show, if they can, the existence of any other statutory reason for dispensing with the father's consent.

---

5. Restatement, Conflict of Laws § 28.

6. Oxley v. Oxley, 1946, 81 U.S.App.D.C. 346, 159 F.2d 10; Restatement, Conflict of Laws § 32. The child's domicile is to be determined under the law of this jurisdiction. Williams v. North Carolina, 1945, 325 U.S. 226, 230–231, 65 S.Ct. 1092, 89 L.Ed. 1577.

7. On this subject, the brief filed in their behalf contains the following:
"* * * That the parties were domiciled in the District of Columbia, would not preclude their physical presence in Florida at a given time. It is neither admitted nor denied by petitioner's counsel that the wife and child were in Florida during the period, *as counsel has never inquired on this point, and is without knowledge* * * *."  (My emphasis.) This rather extraordinary statement seems to me to border on being an admission that the child was not in Florida during the critical period.